**CASE NO. 24-2132**

# IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KRYSTLE and ANTHONY PERRY, individually and on behalf of
their minor child K.P.

*Plaintiffs-Appellees*

v.

STACY MARTENEY, in her official capacity as the Virtual Learning Coordinator
of the Upshur County Virtual School; CHRISTINE MILLER, in her official capacity
as Superintendent of the Upshur County School District.

*Defendants-Appellants*

and

THE BOARD OF EDUCATION OF THE COUNTY OF UPSHUR, et al.

*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA AT ELKINS

---

**OPENING BRIEF OF DEFENDANTS-APPELLANTS
STACY MARTENEY AND CHRISTINE MILLER**

---

Robert J. Kent
Ryan S. Moore
Leigh Anne Wilson
**BOWLES RICE. LLP**
501 Avery Street
P. O. Box 49
Parkersburg, WV. 26102
Tele: (304) 485-8500
rkent@bowlesrice.com
rmoore@bowlesrice.com
lwilson@bowlesrice.com

Counsel for Defendants-Appellants -
Stacy Marteney, Etc., et al.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-2132__      Caption: __Perry et al v. Marteney et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Stacy Marteney, in her official capacity as Virtual Learning Coordinator of the Upshur Cnty. Virtual School__
(name of party/amicus)

__Christine Miller, in her official capacity as Superintendent of Upshur Cnty. School District__

who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Robert J. Kent                          Date:    11/25/2024

Counsel for: Appellants

- 2 -

Print to PDF for Filing

## <u>TABLE OF CONTENTS</u>

**Page(s):**

TABLE OF AUTHORITIES…………………………………………………iii

INTRODUCTION…………………………………………………………….1

JURISDICTIONAL STATEMENT………………………………………...2

STATEMENT OF THE ISSUE…………………………………………..3

STATEMENT OF THE CASE…………………………………………...3

    I.    The West Virginia Legislature enacted West Virginia Code § 16-3-4 to protect the children of the schools in this state from entirely preventable deadly diseases…………………………………………3

    II.    The Lawsuit……………………………………………………9

SUMMARY OF THE ARGUMENT……………………………………...10

STANDARD OF REVIEW……………………………………………..12

ARGUMENT…………………………………………………………...12

    I.    West Virginia Code § 16-3-4 does not violate the First Amendment…...12

        A. West Virginia Code § 16-3-4 is subject to rational basis review………..15

            1. West Virginia Code § 16-3-4 is neutral………………………15

            2. West Virginia Code § 16-3-4 is generally applicable………….16

                a. The Statute does not allow for "entirely discretionary exceptions" in violation of *Fulton*……...16

                b. Religious exemptions and medical exemptions are not "comparable."…………………………19

i

B. Even if strict scrutiny applies, West Virginia Code § 16-3-4 is constitutional…………………………………………………………………22

    1. The State has a compelling interest…………………………..22

    2. West Virginia Code § 16-3-4 is narrowly tailored……………23

        a. The Statute is not underinclusive……………………...24

C. The Statute is constitutional under rational basis review………………25

CONCLUSION………………………………………………………………...27

STATEMENT ON ORAL ARGUMENT…………………………………………28

CERTIFICATE OF COMPLIANCE…………………………………………...29

# TABLE OF AUTHORITIES

**Cases:**                                                                                   **Page(s):**

*Bosarge v. Edney*,
- - F. Supp. 3d - -, 2023 WL 5598983 (S.D. Miss. Aug. 29, 2023)………………..14

*Bowen v. Roy*,
476 U.S. 693, 106 S. Ct. 2147, 90 L.Ed. 2d 735 (1986)………………………… 15

*Church of Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520 (1993)………………….……………………………..…….. 15, 16

*D.J. v. Mercer Cnty. Bd. of Educ.*,
No. 13-0237, 2013 WL 6152363……………………………………...…....22, 26

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021) *cert. denied* 142 S. Ct. 17 (2021)……………..… 20, 26

*Employment Div., Dept of Human Resources of Ore. v. Smith*,
494 U.S. 872, 110 S. Ct. 1595 (1990)……………………………………… 16

*FCC v. Beach Comm'ncs*,
508 U.S. 307, 113 S. Ct. 2096 (1993)……………………………………… 26

*F.F. ex rel. Y.F. v. State*,
194 A.D.3d 80, 143 N.Y.S.3d 734 (3d Dep't 2021);
*cert. denied sub nom. F.F. ex rel. Y.F. v. New York*, —U.S.—,
142 S. Ct. 2738, 213 L.Ed.2d 797 (2022)……………………………………14

*Fifth Ave. Presbyterian Church v. City of N.Y.*,
293 F.3d 570 (2d Cir. 2002)………………………………………...….…… 26

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021)…………………………………………………*passim*

*Gonzales v. O. Centro Espirita Beneficiente Uniao de Vegetal*,
546 U.S. 418, 126 S. Ct. 1211 (2006)…………………………………………….. 22

*Grimmett v. Freeman*,
59 F.4th 689 (4th Cir. 2023)………………………………………………………… 11

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905)……………………………………………….....…10, 12, 13

*Love v. State Dep't of Educ.*,
29 Cal.App.5th 980, 240 Cal. Rprtr. 3d 861 (2018)……………………….….. 14

*McCarthy v. Boozman*,
212 F. Supp. 2d 945 (W.D. Ark. 2002)………………………………....…… 14

*Miller v. McDonald*,
No. 1:23-CV-00484 EAW,
2024 WL 1040777 (W.D.N.Y. Mar. 11, 2024)…………………………………14

*Phillips v. City of New York*,
775 F.3d 538 (2015) *cert. denied* 577 U.S. 822 (2015)………………….…….… 13

*Prince v. Massachusetts*,
321 U.S. 158 (1944)……………………………………………………………13

*Royce v. Bonta*,
No. 3:23-CV-02012-H-BLM,
2024 WL 1269485 (S.D. Cal. Mar. 25, 2024)…………………………………14

*Sherr v. Northport-East Northport Union Free Sch. Dis.*,
672 F. Supp. 81 (E.D.N.Y. 1987)………………………………....……..… 14

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021)……………………………………………..,,,,11, 19, 20

*We The Patriots USA, Inc. v. Connecticut Off. Of Early Childhood Dev.*,
76 F.4th 130 (2d. Cir. 2023)…………………………………………… *passim*

*West Virginia Parents for Religious Freedom, et al.*
*v. Matthew Christiansen, et al.*,

No. 23-1887, slip op. 1009 (4th Cir. Dec. 31, 2024)………………………… 2, 10, 27

*Whitlow v. California*,
203 F. Supp. 3d 1079 (S.D. Cal. 2016)…………………………………………… 14

*Workman v. Mingo Cnty. Bd. Of Education.*,
419 F. App's 348 (4th Cir. 2011) (unpublished)
*cert. denied* 555 U.S. 1036 (2011)……………………………………………..*passim*

*Zucht v. King*,
260 U.S. 174 (1922)………………………………………………...……… 13

**Statutes:**

28 U.S.C. § 1291(a)(1)…………………………………………………....…3

28 U.S.C. § 1331…………………………………………………...…2

42 U.S.C. § 1983……………………………………………………...2

W. Va. Code § 16-1-1……………………………………………………5

W. Va. Code § 16-3-4……………………………………………..*passim*

W. Va. Code § 16-3-4(b)…………………………………………………1

W. Va. Code § 16-3-4(c)………………………………………………6

W. Va. Code § 16-3-4(h)…………………………………………..1, 7, 17

W. Va. Code § 16-3-4(h)(1)…………………………………………7, 18

W. Va. Code § 16-3-4(h)(4)…………………………………………9, 18

W. Va. Code § 16-3-4(h)(5)…………………………………………9, 19

W. Va. Code § 16-3-5(a)…………………………………………..20

W. Va. Code § 18-8-1(n)(1)(A)……………………...………….25

W. Va. Code § 18-8-1(n)(1)(B)…………………………...………… 25

W. Va. Code R. § 64-95-1, *et seq*…………………………...…7

W. Va. Code R. § 64-95-16……………………………………7

W. Va. Code R. § 64-95-17.4……………………………………7

W. Va. Code R. § 64-95-17.8.d…………………………………………....8, 18

W. Va. Code R. § 64-95-17.8.e…………………………………………9, 18

W. Va. Code R. § 64-95-2………………………………………….…8

W. Va. Code R. § 64-95-2.4………………………………………8, 17

W. V. Code R. § 64-95-2.10………………………………………8, 17

**Constitutional Provisions:**

U.S. Const. amen. I……………………………………………...*passim*

**Other Authorities:**

1855 Mass. Acts. 414 § 2……………………………………………..4

Aamer Imdad et al.,
*Religious Exemptions for Immunization and Risk of Pertussis
in New York State*, 2000-2011, 132 Pediatrics 37 (2013)……………...……… 21

American Academy of Pediatrics,
*14 Diseases you Almost Forgot About Thanks to Vaccines*,
(April 8, 2021), https://www.healthychildren.org/English/safety-
prevention/immunizations/Pages/Vaccination-Protects-Against-These-
Diseases.aspx…………………………………………………………………5

CDC,
*A Child's Health is the Public's Health* (Oct. 24, 2022).
https://archive.cdc.gov/#/details?url=https://www.cdc.gov/
childrenindisasters/features/children-public-health.html………………………6, 25

CDC,
*Contraindications and Precautions* (Jul. 25, 2024).
https://www.cdc.gov/vaccines/hcp/imz-best-practices/
contraindications-precautions.html……………………………………..8, 18

CDC, *History of Smallpox* (Oct. 23, 2024).
https://www.cdc.gov/smallpox/about/history.html……………………………4, 5

CDC,
Morbidity and Mortality Weekly Report (MMWR),
*Notes from the Field: Measles Outbreak—Central Ohio,*

*2022-2023* (Aug. 4, 2023)
https://www.cdc.gov/mmwr/volumes/72/wr/mm7231a3.htm............................7, 24

Charles J. Mullett, et al.,
Opinion: West Virginia is a National Leader in
Childhood Immunizations—Let's Stay Protected (Feb. 5, 2023),
https://www.wvnews.com/rivercities/gallipolis/
opinion/west-virginia-is-a-national-leader-in-
childhood-immunizations-let-s-stay-protected/
article_79434088-a5c7-11ed-8120-ebc1559d7f55.html…………………….....…4

Concepcion F. Estivariz, MD et al.,
Chapter 18: Poliomyelitis (Aug. 2021),
https://www.cdc.gov/pinkbook/hcp/table-of-contents/chapter-18-
poliomyelitis.html?CDC_AAref_Val=https
://www.cdc.gov/vaccines/pubs/pinkbook/polio.html………………………………5

Daniel R. Feiken et al.,
*Individual and Community Risks of Measles and Pertussis*
*Associated with Personal Exemptions to Immunization*,
284(24) JAMA 3145 (2000)…………………………………………………………22

Eileen Wang, et al., *Nonmedical Exemptions from School*
*Immunization Requirements: A Systematic Review*,
104 Am. J. Pub. Health (2014),
https://pmc.ncbi.nlm.nih.gov/articles/PMC4202987/
pdf/AJPH.2014.302190.pdf…..……………………………………………………..3

Jacqueline K. Olive, et al.,
*The State of the Antivaccine Movement*
*in the United States: A Focused Examination of Nonmedical*
*Exemptions in States and Counties*, 15(7) PLOS Medicine (2018)………………21

James Colgrove & Abigail Lowin,
*A Tale of Two States: Mississippi, West Virginia,*
*and Exemptions to Compulsory School Vaccination Laws*,
35:2 Health Affairs 348 (2016)………………………………..……………… 21

Lawrence O. Gostin,
*Law, Ethics, and Public Health*
*in the Vaccination Debates*, JAMA Online (2015)……………………….…… 4

Lisa M. Costell, M.D., M.P.H., F.A.A.P.,
Opinion: As a pediatrician and mom, I thank Governor Justice
for protecting WV kids (Mar. 27, 2024),
https://wvpress.org/wvpa-sharing/opinion-as-a-pediatrician
-and-mom-i-thank-governor-justice-for-protecting-wvkids/…………………..………23

Saad B. Omer et al.,
*Geographic Clustering of Nonmedical Exemptions*
*to School Immunization Requirements and Associations*
*with Geographic Clustering of Pertussis*,
168 (12) AM. J. Epidemiology 1389 (2008)………………………………………...21

Saad B. Omer et al.,
*Vaccination Policies and Rates of Exemption from Immunization*,
2005-2011, 367 N. Eng. J. Med. 1170 (2012)………………………………… 21

Saad B. Omer,
*Trends in Kindergarten Rates of Vaccine Exemption and State-Level*
*Policy, 2011-2016*, 5(2) Open Forum Infectious Diseases (2018)………………...21

The Journal,
*West Virginia Department of Health Provides Measles*
*Update* (May 12, 2024). Available at https://www.journal-news.net/
journal-news/west-virginia-department-of-health-provides-measles-
update/article_f138cade-a991-5cbd-af97-f475d1ba82a4.html…………………....24

Upshur County Virtual School Policy – Policy 2013
 Available at https://core-docs.s3.amazonaws.com/documents/asset/
uploaded_file/1799/Upshur_County/2890375/Policy_2013_-
_Upshur_County_Virtual_School_Policy.pdf………………………………………25

W. Va. DHHR, *Measles (Rubeoloa) Information Sheet*
*for General Public* (April 2024). Available at
https://oeps.wv.gov/measles/documents/
community/measles_fact_sheet.pdf………………………………………….…7, 24

## **INTRODUCTION**

This Appeal arises from a First Amendment Free Exercise challenge to West Virginia Code § 16-3-4, which sets forth mandatory vaccination requirements for school attendance.  Plaintiffs-Appellees ("Plaintiffs") filed a lawsuit in the Federal District Court for the Northern District of West Virginia asserting a single cause of action: a First Amendment claim challenging the law as applied to Plaintiffs.  JA011. Along with the Complaint, Plaintiffs sought emergency injunctive relief on that basis. JA148. The statute at issue requires that West Virginia students be immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus, and whooping cough.  *See* W. Va. Code § 16-3-4(b)-(c) (hereinafter, the "Statute").  The Statute provides one form of exception: a medical exemption granted "upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine." *Id*. at § 16-3-4(h).

The District Court granted Plaintiffs' requested preliminary injunction on the basis that the Statute was not generally applicable because the statutory scheme relies upon the medical opinion of trained medical professionals to determine whether there is sufficient evidence to grant a medical exemption request. JA585-588.  In so doing, the District Court acknowledged that while W. Va. Code § 16-3-4 did not allow for *sole discretion*, as was the case in *Fulton v. City of Philadelphia*. 141 S. Ct. 1868 (2021), the Statute is "sufficiently discretionary" to fall outside the

"generally applicable" field.  JA584-585.  After concluding that W. Va. Code § 16-3-4 was subject to strict scrutiny, the District Court held that the Statute was not narrowly tailored to achieve the State's compelling interest because the Statute was underinclusive. JA591-595.

Contrary to the District Court's order, West Virginia Code § 16-3-4 is plainly constitutional, regardless of whether it is subject to rational basis or strict scrutiny review.  For this reason, and for the reasons set forth more fully below, the Court should reverse the District Court's order determining that West Virginia Code § 16-3-4 is unconstitutional as applied to Plaintiffs and hold (as it did in *Workman v. Mingo Cnty. Bd. of Educ.*, 419 Fed. App'x 348 (4th Cir. 2011) (unpublished) and recently noted again in *West Virginia Parents for Religious Freedom, et al. v. Matthew Christiansen, et al.*, No. 23-1887, slip op. 1009, 1021 at n.9 (4th Cir. Dec. 31, 2024))[1] that W. Va. Code § 16-3-4 "does not contravene the Free Exercise Clause." No. 23-1887, slip op. 1009, 1021 at n.9.

## JURISDICTIONAL STATEMENT

The District Court has federal question jurisdiction over Plaintiffs' federal claim under the First Amendment and 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.  On

---

[1] *West Virginia Parents for Religious Freedom, et al*., is a case that, on the merits, presents a nearly identical challenge to W. Va. Code § 16-3-4 as the instant appeal does.

October 15, 2024, the District Court granted Plaintiffs' request for a preliminary injunction. JA534. A timely notice of appeal was filed on November 11, 2024. JA602. This Court has appellate jurisdiction under 28 U.S.C. § 1291(a)(1).

## STATEMENT OF THE ISSUE

1.  Whether the immunization requirements under West Virginia Code § 16-3-4 are unconstitutional under a Free Exercise Clause challenge of the First Amendment as applied to Plaintiff, where Plaintiff is a student in a virtual school operated by the Upshur County Board of Education.

## STATEMENT OF THE CASE

**I.    The West Virginia Legislature enacted West Virginia Code § 16-3-4 to protect the children of the schools in this state from entirely preventable deadly diseases.**

"Childhood vaccinations are one of the most significant public health interventions of all time. They reduce the risk of contracting dangerous vaccine-preventable childhood diseases on the individual level and, when immunization coverage is high enough, confer herd immunity at the population level for those diseases that are contagious."[2] By one estimate, they have prevented more than 100

---

[2] Eileen Wang, et al., *Nonmedical Exemptions from School Immunization Requirements: A Systematic Review*, 104 Am. J. Pub. Health at e62 (2014), https://pmc.ncbi.nlm.nih.gov/articles/PMC4202987/pdf/AJPH.2014.302190.pdf.

million cases of serious disease since 1924.  *See* Lawrence O. Gostin, *Law, Ethics, and Public Health in the Vaccination Debates*, JAMA Online at E1 (2015).  As a result, all fifty States impose some form of vaccination requirements as a condition for children attending school.  *Id*.  However, not all states have had the same success that West Virginia has (which has long been one of the most effective school immunization policies in the nation) in securing low incidence rates of deadly childhood diseases.[3]

School immunization policies in the United States can be traced back to the nineteenth century, when they were enacted to control smallpox.[4]  Since the sixth century, smallpox had traveled the globe killing up to 30% of infected individuals.[5]  Thankfully, smallpox has since been eradicated throughout the world due to variolation[6] and vaccination.

---

[3] *See* Charles J. Mullett, et al., Opinion: West Virginia is a National Leader in Childhood Immunizations—Let's Stay Protected (Feb. 5, 2023), https://www.wvnews.com/rivercities/gallipolis/opinion/west-virginia-is-a-national-leader-in-childhood-immunizations-let-s-stay-protected/article_79434088-a5c7-11ed-8120-ebc1559d7f55.html

[4] Massachusetts passed the first school vaccine mandate in May of 1855.  An Act to Secure General Vaccination. 1855 Mass. Acts. 414, § 2 ("The school committee of the several towns and cities shall not allow any child to be admitted or connected to the public schools who has not been duly vaccinated.").

[5] CDC, *History of Smallpox* (Oct. 23, 2024), https://www.cdc.gov/smallpox/about/history.html

[6] Prior to the development of the vaccine, variolation was the process in which healthy individuals were exposed to smallpox sores.  This exposure typically led to

Vaccines have also virtually eliminated Poliomyelitis ("Polio"), which left tens of thousands of children paralyzed every year.[7]  In 1952, the United States documented more than 21,000 paralytic cases of the virus.  *Id.*  There is no cure for Polio, but with the advent and use of safe and effective vaccines, the virus is now avoidable.  Vaccines have also given us relief and protection from tetanus, influenza, hepatitis a, hepatitis b, rubella, Hib, measles, pertussis, pneumococcal disease, rotavirus, mumps, chickenpox, and diphtheria.[8]

West Virginia's first compulsory immunization law was passed in 1905.  To this day, West Virginia's elected leaders have long embraced these scientific miracles to protect children from certain death or a lifetime of disability.  These elected leaders have declared that "[i]t is the policy of [West Virginia] to promote the physical and mental health of all of its citizens and to prevent disease, injury, and disability whenever possible."  W. Va. Code § 16-1-1.

---

a milder form of the illness and greatly reduced the mortality rate in comparison to a typical smallpox infection. *See* CDC, *History of Smallpox* (Oct. 23, 2024).

[7] Concepcion F. Estivariz, MD et al., Chapter 18: Poliomyelitis (Aug. 2021), https://www.cdc.gov/pinkbook/hcp/table-of-contents/chapter-18-poliomyelitis.html?CDC_AAref_Val=https://www.cdc.gov/vaccines/pubs/pinkbook/polio.html

[8] American Academy of Pediatrics, *14 Diseases you Almost Forgot About Thanks to Vaccines*, (April 8, 2021), https://www.healthychildren.org/English/safety-prevention/immunizations/Pages/Vaccination-Protects-Against-These-Diseases.aspx.

West Virginia has a compelling interest in vaccinating and protecting its children.  "Children have more contact with others, and they have less developed immune systems to fight off infections.  This means they are more likely to catch an illness that can spread from person to person."[9]

In 2015, the West Virginia Legislature continued in its longstanding pursuit of promoting the health of its school children when it enacted West Virginia Code § 16-3-4, which provides that "[n]o child or person may be admitted or received in any of the schools of the state or state-regulated child care center" unless the child has been immunized against the following diseases: chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus, and whooping cough.  W. Va. Code § 16-3-4(c).

And the proof is in the pudding.  Because of the Statute, West Virginia's childhood vaccine rate has been incredibly effective.  Even as West Virginia's neighboring state of Ohio experienced a measles outbreak in 2022 among unvaccinated children, causing thirty-six children (of the eighty-five who had

---

[9] CDC, *A Child's Health is the Public's Health* (Oct. 24, 2022), https://archive.cdc.gov/#/details?url=https://www.cdc.gov/childrenindisasters/features/children-public-health.html

contracted the disease) to be hospitalized,[10] West Virginia did not document a *single case* of measles.[11]

The Statute allows for an exemption for individuals who cannot safely receive specific vaccines which is set forth in Section 16-3-4(h) and its supporting regulations.[12]  To begin the process of seeking a medical exemption, the child must submit a request "accompanied by the certification of a licensed physician stating that the physical condition of the child is such that immunization is contraindicated or there exists a specific precaution to a particular vaccine."  W. Va. Code § 16-3-4(h)(1).  Next, the State's Immunization Officer (who is a licensed physician appointed by the Commissioner of the Bureau of Public Health) reviews the evidence presented by the physician and determines if there is "sufficient medical evidence that an immunization is contraindicated or there exists a specific precaution to a particular vaccine." *Id*.; W. Va. Code R. § 64-95-17.4; W. Va. Code R. § 64-95-16.

---

[10] CDC Morbidity and Mortality Weekly Report (MMWR), *Notes from the Field: Measles Outbreak—Central Ohio, 2022-2023* (Aug. 4, 2023) https://www.cdc.gov/mmwr/volumes/72/wr/mm7231a3.htm

[11] W. Va. DHHR, *Measles (Rubeoloa) Information Sheet for General Public* (April 2024). Available at https://oeps.wv.gov/measles/documents/community/measles_fact_sheet.pdf

[12] Those regulations can be found at West Virginia Code of State Rules § 64-95-1, *et seq*.

The terms "contraindicated" and "precaution" are narrowly defined, which provides the guardrails for the evaluating physician(s). *See* W. Va. Code R. § 64-95-2. A contraindication is a "medical condition which renders an immunization improper for a particular individual." W. Va. Code R. § 64-95-2.4. The recognized contraindications for each vaccine are provided by the Advisory Committee on Immunization Practices ("ACIP") from the Centers for Disease Control and Prevention ("CDC"). *Id.*[13] West Virginia Code of State Rules § 64-95-2.10 defines a precaution as a "condition defined under the current standards of immunization practice that might increase the chance or severity of an adverse vaccine reaction or compromise the ability of the vaccine to produce immunity." W. V. Code R. § 64-95-2.10. Relying on these narrowly defined criteria, if the State Immunization Officer determines that there is sufficient evidence that an immunization is contraindicated or a precaution to a particular vaccine exists, then the exemption will be granted. If not, the exemption request will be denied.

If the exemption request is denied by the State Immunization Officer, the denial may be appealed to the State Health Officer[14] who, at this time, will review

---

[13] CDC, *Contraindications and Precautions* (Jul. 25, 2024). https://www.cdc.gov/vaccines/hcp/imz-best-practices/contraindications-precautions.html

[14] When appealing to the State Health Officer, the child's parents or guardians may submit additional evidence to support a contraindication or precaution. W. Va. Code R. § 64-95-17.8.d

all of the evidence and make a determination as to whether a contraindication or precaution has been substantiated by a preponderance of the evidence. W. Va. Code § 16-3-4(h)(4); W. Va. Code R. § 64-95-17.8.e. Finally, if the State Health Officer denies the exemption request, the child's parents or guardian may appeal under West Virginia's Administrative Procedures Act. W. Va. Code § 16-3-4(h)(5).

## II.    The Lawsuit

Plaintiffs filed their constitutional challenge of West Virginia's longstanding compulsory immunization law on July 5, 2024. JA011. The Complaint sets forth a single claim—violation of Plaintiffs' free exercise rights. JA054-064. Six days later, Plaintiffs filed a Motion for Preliminary Injunction and Expedited Consideration. JA148. Defendants-Appellants Marteney and Miller[15] filed a response to Plaintiffs' motion, [JA200], and the parties appeared before the District Court for hearing on August 12, 2024.

The District Court ultimately granted Plaintiffs' motion for preliminary injunctive relief on October 15, 2024. JA534. The District Court observed that West Virginia Code § 16-3-4 was not generally applicable because it is "sufficiently

---

[15] Defendants-Appellants' response in opposition to Plaintiffs' motion also included the Upshur County Board of Education. However, the Upshur County Board of Education was voluntarily dismissed from the case, [JA549], leaving only Defendant Marteney and Defendant Miller, in their respective official capacities, as parties to this appeal.

discretionary" to rise to the level of *Fulton*,[16] despite acknowledging that the Statute did not provide *sole discretion* to a state official as was the case in *Fulton*. JA584-585.  After concluding that the Statute was subject to strict scrutiny, the District Court further held that although W. Va. Code § 16-3-4 serves a compelling state interest [JA591], it is not narrowly tailored, and is therefore unconstitutional as applied to Plaintiffs.  JA591-595.  This appeal followed.

### SUMMARY OF THE ARGUMENT

The District Court improperly concluded that West Virginia Code § 16-3-4 is unconstitutional as applied to Plaintiffs.  As this Court has already held in *Workman v. Mingo Cnty. Bd. of Educ.*, 419 Fed. App'x 348 (4th Cir. 2011) (unpublished) and stated again in *West Virginia Parents for Religious Freedom, et al.*, West Virginia Code § 16-3-4 "does not contravene the Free Exercise Clause. And although [*Workman*] was not published, it was unanimously rendered after full briefing and oral argument, and on the basis of *Jacobson v. Massachusetts* and its progeny. *See* 197 U.S. 11 (1905)."  *West Virginia Parents for Religious Freedom, et al. v. Matthew Christiansen, et al.*, No. 23-1887, slip op. 1009, 1021 at n.9 (4th Cir. Dec. 31, 2024).

---

[16] *Fulton v. City of Philadelphia*. 141 S. Ct. 1868 (2021).

Neither *Fulton*[17] nor *Tandon*[18] change this, which is why the Second Circuit recently upheld a nearly identical mandatory vaccination scheme (which was decided after *Fulton* and *Tandon*). *See We The Patriots USA, Inc. v. Connecticut Off. Of Early Childhood Dev.*, 76 F.4th 130, 155 (2d. Cir. 2023). The Statute is neutral because there is no indication that West Virginia Code § 16-3-4 impermissibly targets religious practice. It is generally applicable because it does not provide a state official with the level of discretion that *Fulton* did. Moreover, religious and medical exemptions are not comparable, because a medical exemption serves the State's interest to maintain childrens' health and well-being in West Virginia in a way that a religious exemption simply does not.

Even if the Statute was subject to strict scrutiny (which it is not), it survives strict scrutiny, nonetheless. *See Workman,* 419 Fed. App'x 348 (4th Cir. 2011). The Statute serves a compelling state interest and is narrowly tailored to achieve that compelling interest, which is why West Virginia consistently continues to be one of our nation's leading states in protecting our children from vaccine-preventable diseases. The District Court improperly concluded that West Virginia Code § 16-3-4 was unconstitutional and therefore, the District Court's order should be reversed.

---

[17] *Fulton v. City of Philadelphia*. 141 S. Ct. 1868 (2021).
[18] *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).

## STANDARD OF REVIEW

The District Court's order is subject to *de novo* review.  *See Grimmett v. Freeman*, 59 F.4th 689, 692 (4th Cir. 2023) (stating that "courts of appeals should review *de novo* a district court's determination of state law.") (internal quotation marks and citations omitted).

## ARGUMENT

## I.      West Virginia Code § 16-3-4 does not violate the First Amendment.

It is helpful to begin with a brief overview of the Supreme Court caselaw that has led us to this point.  Starting with *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), the Supreme Court has consistently upheld the States' ability to enact "health laws of every description" to protect the safety of the general public. *Id.*, 25.  In *Jacobson*, the Supreme Court rejected a Fourteenth Amendment due process challenge to a Massachusetts law that made it a crime to refuse to be vaccinated for smallpox, holding that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its member." *Id.*, 26-27.

Although *Jacobson* did not address the Free Exercise Clause, which had not yet been applied to the States, the Court broadly recognized that the Massachusetts law did not "invade[] *any right* secured by the Federal Constitution." *Id.*, 38 (emphasis added).  It also cited favorably to several state court decisions that upheld

"statutes making the vaccination of children a condition of their right to enter or remain in public schools." *Id.*, 31-34. Indeed, the Supreme Court later relied upon *Jacobson* when rejecting due process and equal protection challenges to a compulsory school vaccination law, concluding that "[*Jacobson*] had settled that it is within the police power of a State to provide for compulsory vaccination . . . ." *Zucht v. King*, 260 U.S. 174, 176 (1922).

More than two decades later, in *Prince v. Massachusetts*, 321 U.S. 158 (1944), the Supreme Court rejected a free exercise challenge to a child labor law. *Id.*, 159-61. In so doing, the Court cited *Jacobson* for the proposition that one "cannot claim freedom from compulsory vaccination . . . on religious grounds. *The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death*." *Id.*, 166-67 and n.12 (emphasis added; footnote omitted).

For nearly the last one hundred years, federal courts across the country (including this Court) have repeatedly held that it is well within the police power of the State to mandate vaccination under certain circumstances, and the decision to not provide a religious exemption to such laws does not violate the Free Exercise Clause. *See Workman v. Mingo Cnty. Bd. Of Education.*, 419 F. App's 348, 352-54 (4th Cir. 2011) (concluding that "the West Virginia Statute requiring vaccinations as a condition of admission to school does not unconstitutionally infringe on [the

plaintiff's] right to free exercise") *cert. denied* 555 U.S. 1036 (2011); *Phillips v. City of New York*, 775 F.3d 538, 543 (2015) ("[M]andatory vaccination as a condition for admission to school does not violate the Free Exercise Clause.") *cert. denied* 577 U.S. 822 (2015); *We The Patriots USA, Inc. v. Connecticut Off. Of Early Childhood Dev.*, 76 F.4th 130, 156 (2d. Cir. 2023) ("Allowing students for whom vaccination is medically contraindicated to avoid vaccination while requiring students with religious exemptions to be vaccinated does, in both instances, advance the State's interest in promoting health and safety."); *McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) ("The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-age children."); *Sherr v. Northport-East Northport Union Free Sch. Dis.*, 672 F. Supp. 81, 88 (E.D.N.Y. 1987) ("[I]t has been settled law for many years that claims of religious freedom must give way in the face of the compelling interest of society in fighting the spread of contagious disease through mandatory inoculation programs."); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1085-89 (S.D. Cal. 2016); *Love v. State Dep't of Educ.*, 29 Cal.App.5th 980, 240 Cal. Rprtr. 3d 861, 868 (2018); *F.F. ex rel. Y.F. v. State*, 194 A.D.3d 80, 143 N.Y.S.3d 734, 742 (3d Dep't 2021), *cert. denied sub nom. F.F. ex rel. Y.F. v. New York*, —U.S.—, 142 S. Ct. 2738, 213 L.Ed.2d 797 (2022); *Miller v. McDonald*, No. 1:23-CV-00484 EAW, 2024 WL 1040777 (W.D.N.Y. Mar. 11, 2024); *Royce v. Bonta*, No. 3:23-CV-

02012-H-BLM, 2024 WL 1269485 (S.D. Cal. Mar. 25, 2024); *but see Bosarge v. Edney*, - - F. Supp. 3d - -, 2023 WL 5598983 (S.D. Miss. Aug. 29, 2023).

**A. West Virginia Code § 16-3-4 is subject to rational basis review.**

A law that incidentally burdens religious practices is subject only to rational basis review if it is both "neutral" and "generally applicable." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993).

**1. West Virginia Code § 16-3-4 is neutral.**

A law is not neutral if it "restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533, 141 S. Ct. 1868, 1877 (2021). Even if the law is facially neutral, it may still fail if the challenger can show that "the object of the law" is to prevent or suppress a particular religious practice. *Church of Lukumi Babalu Aye*, 508 U.S. at 533. To determine whether the law impermissibly targets religion, the Court must "begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face." *Id*. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context." *Id*. Even if a law is facially neutral, it may still be found to be a violation of the Free Exercise clause if it results in the "covert suppression of particular religious beliefs." *Bowen v. Roy*, 476 U.S. 693, 703, 106 S. Ct. 2147, 2154, 90 L.Ed. 2d 735 (1986).

15

West Virginia Code § 16-3-4 is neutral.  On its face, the law makes no mention of religion or religious practice.  Furthermore, there is no evidence that the law was passed for the purpose of targeting certain religious practices.  There is no indication that the law targets religious practice because of its religious nature.  Therefore, the law is neutral.

## 2.  West Virginia Code § 16-3-4 is generally applicable.

To be generally applicable, a law may not selectively burden religiously motivated conduct while exempting conduct that is comparable and secularly motivated.  *See Lukumi*, 508 U.S. at 543.  Further, a law is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing a "mechanism for individualized exemptions."  *Fulton v. City of Philadelphia, Pennsylvania*, 539 U.S. 522, 533, 141 S. Ct. 1868, 1877 (2021) (quoting *Employment Div., Dept of Human Resources of Ore. v. Smith*, 494 U.S. 872, 884, 110 S. Ct. 1595, 1603 (1990)).  Under that rule, if a state reserves the authority to "grant exemptions based on the circumstances underlying each application," it must provide a compelling reason to exclude "religious hardship" from its scheme.  *Id*. (quoting *Smith*, 494 U.S. at 884).  A law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Id*. (citing *Lukumi*, 508 U.S. at 542-46).

### a. The Statute does not allow for "entirely discretionary exceptions" in violation of *Fulton*.

West Virginia Code § 16-3-4 does not allow for a "mechanism for individualized exemptions" in violation of *Fulton*. The statute does not create "a formal system of entirely discretionary exceptions," but rather it provides a limited and objective criterion used to judge all exemption requests. *Fulton*, 141 S. Ct. at 1878. The Immunization Officer (who is a nonparty who considers all exemption requests) may only consider whether there is "sufficient medical evidence that immunization is contraindicated" for that individual, or whether "there exists a specific precaution to a particular vaccine." W. Va. Code § 16-3-4(h).

Under West Virginia Code of State Rules § 64-95-2.4, "contraindication" means:

> a medical condition which renders an immunization improper for a particular individual. Contraindications for each vaccine are found in statements written and published by the Advisory Committee on Immunization Practices (ACIP) as Recommendations of the Immunization Practices Advisory Committee and in Vaccine Information Statements (VIS) from the Centers for Disease Control and Prevention (CDC). The recommendations of the ACIP and VIS regarding contraindications can be found at http://www.cdc.gov/vaccines.

A "precaution" is defined by West Virginia Code of State Rules § 64-95-2.10 as a "condition defined under the current standards of immunization practice that might increase the chance of severity of an adverse vaccine reaction or compromise the ability of the vaccine to produce immunity." This definition is identical to the

one provided by the CDC.[19]  The recognized contraindications and precautions to West Virginia's mandated vaccines are expressly and objectively limited.[20]  Contrary to the District Court's order, the law exempts an *objectively defined category* of people from receiving one or more vaccines.

The Immunization Officer will deny any request for a medical exemption unaccompanied by "the certification of a licensed physician stating that the physical condition of the child is such that immunization is contraindicated or there exists a specific precaution to a particular vaccine." W. Va. Code § 16-3-4(h)(1).  The Statute provides rigid and objective rules under which to evaluate a request for a medical exemption and does not invite state officials to consider the motivations behind an exemption request.

If denied, a request containing a certification may appeal the decision to the State Health Officer.  W. Va. Code § 16-3-4(h)(4).  The State Health Officer will review the certification accompanying the request, along with any other medical evidence presented by the family, to determine if the exemption request satisfies one of the objectively recognized contraindications or precautions. W. Va. Code § 16-3-4(h)(4); W. Va. Code R. § 64-95-17.8.d; W. Va. R. 64-95-17.8.e.  If the exemption

---

[19] CDC, *Contraindications and Precautions* (Jul. 25, 2024).
https://www.cdc.gov/vaccines/hcp/imz-best-practices/contraindications-precautions.html
[20] *See id.* at Table 4-1 (setting forth recognized contraindications and precautions).

request does not satisfy one of the objectively recognized contraindications or precautions, the request will be denied by the State Health Officer. The family may then appeal the State Health Officer's decision according to the West Virginia Administrative Procedures Act. W. Va. Code § 16-3-4(h)(5).

However, at no point may any decision maker or tribunal consider anything other than the medical evidence supporting a finding of contraindication or precaution. The mere fact that the statutory scheme incorporates and relies on the professional judgment of medical professionals (as is the case in nearly the entire practice of medicine, generally) to evaluate the existence of contraindication or precaution does not render the statute not generally applicable. The Supreme Court has never held that a single objective exemption—let alone one that is based on the medical condition of the individual—renders a rule not generally applicable.

### b. Religious exemptions and medical exemptions are not "comparable."

Although the District Court's order did not address it, West Virginia Code § 16-3-4 does not treat secular activity more favorably than religious activity. In *Tandon*, the Supreme Court reasoned that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," noting that "[c]omparability is concerned with the risks various activities pose." 141 S. Ct. at

19

1296.   The Court also explained in *Fulton* that for a religious activity to be comparable to secular activity, it must undermine the government's asserted interest "in a similar way." 141 S. Ct. at 1877.

The Statute's medical exemption serves the State's interest "to maintain our children's health and well-being" in a way that a religious exemption does not. *See* W. Va. Code § 16-3-5(a); *see also Does 1-6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021) ("[C]arving out an exception for those people to whom [a] physical health risk applies furthers [state] interests in a way that carving out an exemption for religious objectors would not."), *cert. denied* 142 S. Ct. 17 (2021); *We the Patriots USA*, 579 F. Supp. 3d at 309 ("the decision to exempt individuals from the vaccine requirement for medical reasons does not undermine [the state's] interest, as [the state] would not be protecting the health and safety of schoolchildren if it required these children to undergo medically contradicted treatment.").

Furthermore, the absence of a religious exemption decreases, "to the greatest extent medically possible, the number of unvaccinated students." *We the Patriots USA*, 76 F.4th at 153.  Allowing a religious exemption, however, would "only detract from the State's interest. . . by increasing the risk of transmission of vaccine preventable diseases among vaccinated and unvaccinated students alike." *Id*.   For these reasons, the Second Circuit upheld a nearly identical statutory scheme (which was decided after *Fulton* and *Tandon*) and reasoned that "medical exemptions are

not comparable to religious exemptions." *See We the Patriots USA*, 76 F.4th at 155 (2d. Cir. 2023).

And this sentiment is not shared only by courts. Studies have shown "the connection between the ease of obtaining vaccine exemptions under a state's law and the number of exemptions in the state and, in turn, between high rates of exemption and the risk of outbreaks of vaccine-preventable disease." James Colgrove & Abigail Lowin, *A Tale of Two States: Mississippi, West Virginia, and Exemptions to Compulsory School Vaccination Laws*, 35:2 Health Affairs 348, 352 (2016); Jacqueline K. Olive, et al., *The State of the Antivaccine Movement in the United States: A Focused Examination of Nonmedical Exemptions in States and Counties*, 15(7) PLOS Medicine (2018) (finding states that had increased access to nonmedical vaccination exemptions had lower MMR vaccine coverage)); Saad B. Omer, *Trends in Kindergarten Rates of Vaccine Exemption and State-Level Policy, 2011-2016*, 5(2) Open Forum Infectious Diseases (2018)); Aamer Imdad et al., *Religious Exemptions for Immunization and Risk of Pertussis in New York State*, 2000-2011, 132 Pediatrics 37, 37-43 (2013)); Saad B. Omer et al., *Geographic Clustering of Nonmedical Exemptions to School Immunization Requirements and Associations with Geographic Clustering of Pertussis*, 168 (12) AM. J. Epidemiology 1389 (2008) ("Geographic pockets of vaccine exemptors pose a risk to the whole community."); Saad B. Omer et al., *Vaccination Policies and Rates of*

*Exemption from Immunization*, 2005-2011, 367 N. Eng. J. Med. 1170-71 (2012); Daniel R. Feiken et al., *Individual and Community Risks of Measles and Pertussis Associated with Personal Exemptions to Immunization*, 284(24) JAMA 3145 (2000).

**B. Even if strict scrutiny applies, West Virginia Code § 16-3-4 is constitutional.**

**1. The State has a compelling interest.**

The Statute serves a compelling state interest. *See Workman*, 419 F. App'x at 353 ("[T]he state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest."); *D.J. v. Mercer Cnty. Bd. of Educ.*, No. 13-0237, 2013 WL 6152363, *4 ("[T]he protection of the health and safety of the public is one of the most important roles of the state.").

The Supreme Court has held that generalized policy assertions do not constitute a compelling interest in denying a religious exemption. *See Fulton*, 141 S. Ct. at 1881. However, that standard only applies when the law at issue contains a religious exemption. *See id.* It does not mean that a law must, as a requirement of the Free Exercise clause, *include* a religious exemption. Nor does it mean that, when a religious exemption is not available, the State must conduct an individualized review for each person who requests one. If the State can show that granting a religious exemption to a program would undermine its ability to achieve its compelling interests, then the law will survive strict scrutiny. *See Gonzales v. O.*

22

*Centro Espirita Beneficiente Uniao de Vegetal*, 546 U.S. 418, 435, 126 S. Ct. 1211, 1223 (2006).

As acknowledged by the District Court's order, West Virginia has a compelling interest in protecting its school-aged children from vaccine-preventable, deadly diseases. JA591.

### 2. West Virginia Code § 16-3-4 is narrowly tailored.

The Statute is also narrowly tailored to achieve that compelling interest. Allowing religious exemptions would significantly undermine the State's compelling interest because West Virginia currently enjoys a vaccination rate that allows it to benefit from "herd immunity." Herd immunity occurs when vaccination or immunity rates are high enough such that an infectious disease is unable to spread throughout the community. West Virginia has achieved those vaccination rates in school children.[21] However, any decrease in the vaccination rate threatens the State's herd immunity.

The fact that religious exemptions are permitted in other states is not evidence that less restrictive means exist to achieve the State's interest, as suggested by the

---

[21] *See* Lisa M. Costell, M.D., M.P.H., F.A.A.P., Opinion: As a pediatrician and mom, I thank Governor Justice for protecting WV kids (Mar. 27, 2024). https://wvpress.org/wvpa-sharing/opinion-as-a-pediatrician-and-mom-i-thank-governor-justice-for-protecting-wv-kids/

District Court's order.  JA591.  Importantly, other states with less restrictive laws have lost (or never gained) herd immunity and have suffered outbreaks of preventable diseases.  For example, in 2022, Ohio (where religious exemptions for vaccines are allowed) experienced a measles outbreak that led to eighty-five children contracting measles.[22]  Thirty-six of those children were hospitalized.  *Id*.  Notably, none of the children who contracted measles were vaccinated.  *Id*.  On the other hand, West Virginia had not documented a single case of measles in 15 years prior to April of 2024.[23]  *See* The Journal, *West Virginia Department of Health Provides Measles Update* (May 12, 2024);[24] *See also* W. Va. DHHR*, Measles (Rubeoloa) Information Sheet for General Public* (April 2024).[25]

### a. The Statute is not underinclusive.

Furthermore, West Virginia Code § 16-3-4 is not underinclusive by virtue of the fact that students involved in learning pods or microschools are not subject to the

---

[22] CDC Morbidity and Mortality Weekly Report (MMWR), *Notes from the Field: Measles Outbreak—Central Ohio, 2022-2023* (Aug. 4, 2023) https://www.cdc.gov/mmwr/volumes/72/wr/mm7231a3.htm

[23] In April 2024, there was a single case of measles reported following international travel of a youth who was believed to be under vaccinated. This isolated case did not spread like it has in other states, further supporting the efficacy of West Virginia's herd immunity that West Virginia Code § 16-3-4 serves to provide.

[24] Available at https://www.journal-news.net/journal-news/west-virginia-department-of-health-provides-measles-update/article_f138cade-a991-5cbd-af97-f475d1ba82a4.html

[25] Available at https://oeps.wv.gov/measles/documents/community/measles_fact_sheet.pdf

Statute.[26]  Unlike students in learning pods or microschools, virtual students of Upshur County schools (like Plaintiff-Appellee K.P.), are permitted to engage in the Upshur County schools' organized sports.[27]  As such, if a virtual student were to join the basketball team, the track team, or any other sports team, they would be around other children in the school system.

Declining to require immunization for all children residing in the State (which would encompass those involved in learning pods and microschools) is one way in which West Virginia has narrowly tailored its compulsory immunization law to still further its interest in protecting the health and safety of its school-aged children. Furthermore, the State's limiting of the vaccine mandate to school-aged children— the individuals in our society with the weakest immune systems and who statistically evince the highest rates of virus transmission[28]—is further evidence that West Virginia has endeavored to narrowly tailor its public health laws.

## C. The Statute is constitutional under rational basis review.

---

[26] "Learning pods" and "microschools" are defined in W. Va. Code § 18-8-1(n)(1)(A) and 18-8-1(n)(1)(B), respectively.

[27] *See* Upshur County Virtual School Policy – Policy 2013. Available at https://core-docs.s3.amazonaws.com/documents/asset/uploaded_file/1799/Upshur_County/2890375/Policy_2013_-_Upshur_County_Virtual_School_Policy.pdf

[28] CDC, *A Child's Health is the Public's Health* (Oct. 24, 2022). https://archive.cdc.gov/#/details?url=https://www.cdc.gov/childrenindisasters/features/children-public-health.html

When a law is neutral and of general applicability, the government "need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practice." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 874 (2d Cir. 2002). Rational basis review requires only that the law be rationally related to a legitimate state interest, and as long as there is a conceivable rational basis for the law, it *must* be upheld. *See FCC v. Beach Comm'ncs*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2101 (1993). For a law to be unconstitutional under a rational basis standard, the challenger has "the burden to negat[e] every conceivable basis which might support" the law. *Id*., 315.

West Virginia's interest in protecting the public health of the community and its school children is not only legitimate, but also compelling. *See Workman*, 419 F. App'x at 352; *D.J. v. Mercer Cnty. Bd. of Educ.*, No. 13-0237, 2013 WL 6152363 (W. Va. Nov. 22, 2013) (finding "that there is a compelling state interest for the rules requiring proof of these vaccinations to attend public school in this state"). West Virginia Code § 16-3-4 is rationally related to this interest, as the allowance of nonmedical exemptions threatens community immunity, which the studies amply show. On the other hand, the Legislature's decision to allow medical exemptions does not render the law irrational, as those exemptions further the health of the children for whom vaccines are contraindicated. Therefore, West Virginia Code § 16-3-4 readily withstands rational basis review. *See Does 1-6*, 16 F.4th at 32.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the District Court's order should be reversed, as West Virginia Code § 16-3-4 is plainly constitutional. As this Court recognized in *Workman*[29] and recently noted again in *West Virginia Parents for Religious Freedom, et al.*,[30] West Virginia Code §16-3-4 "does not contravene the Free Exercise Clause."

---

[29] *Workman v. Mingo Cnty. Bd. of Educ.*, 419 Fed. App'x 348 (4th Cir. 2011) (unpublished).
[30] *West Virginia Parents for Religious Freedom, et al. v. Matthew Christiansen, et al.*, No. 23-1887, slip op. 1009, 1021 at n.9 (4th Cir. Dec. 31, 2024).

## <u>STATEMENT ON ORAL ARGUMENT</u>

Oral argument will not assist the Court in deciding this appeal. The facts and legal arguments are adequately presented in the briefs and record.

January 6, 2024

Respectfully submitted,

<u>/s/ Ryan S. Moore</u>
Robert J. Kent (5010)
Ryan S. Moore (14155)
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
(304) 420-5504
Facsimile (304) 420-5587
rkent@bowlesrice.com
rmoore@bowlesrice.com

Leigh Anne Wilson (13927)
Bowles Rice LLP
125 Granville Square, Suite 400
Morgantown, West Virginia 26501
(304) 554-2603
Facsimile (304) 285-2530
lwilson@bowlesrice.com

Counsel for Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Rule 32(f) of the Federal Rules of Appellate Procedure (cover page, disclosure statement, table of contents, table of authorities, statement regarding oral argument, signature block, certificates of counsel, addendum, and attachments):

   This document contains 5953 words.

2. This document complies with the typeface requirements because:

   This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

January 6, 2024                          Respectfully submitted,

                                         */s/ Ryan S. Moore*
                                         Robert J. Kent (5010)
                                         Ryan S. Moore (14155)
                                         Bowles Rice LLP
                                         Fifth Floor, United Square
                                         501 Avery Street, Post Office Box 49
                                         Parkersburg, West Virginia  26102
                                         (304) 420-5504
                                         Facsimile (304) 420-5587
                                         rkent@bowlesrice.com
                                         rmoore@bowlesrice.com

                                         Leigh Anne Wilson (13927)
                                         Bowles Rice LLP
                                         125 Granville Square, Suite 400
                                         Morgantown, West Virginia  26501

(304) 554-2603
Facsimile (304) 285-2530
lwilson@bowlesrice.com

Counsel for Appellants

17316137.14