Appeal No. 24-2132

# In the United States Court of Appeals for the Fourth Circuit

KRYSTLE AND ANTHONY PERRY, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD K.P.,

*Plaintiffs–Appellees*,

*versus*

STACY MARTENEY, *in her official capacity as the Virtual Learning Coordinator of the Upshur County Virtual School;* CHRISTINE MILLER*, in her official capacity as Superintendent of the Upshur County School District,*

*Defendants–Appellants*,

*and*

THE BOARD OF EDUCATION OF THE COUNTY OF UPSHUR, ET AL.

*Defendants.*

———

On Appeal from the United States District Court
for the Northern District of West Virginia at Clarksburg,
No. 2:24-cv-00018-TSK

———

## PLAINTIFFS'/APPELLEES' RESPONSE BRIEF

Aaron Siri
Elizabeth A. Brehm
Walker Moller
SIRI & GLIMSTAD LLP
745 5th Avenue, Suite 500
New York, NY 10151
Tel: 888-747-4529
aaron@sirillp.com

Christopher Wiest
Chris Wiest
Attorney at Law, PLLC
50 E. Rivercenter Blvd., Ste. 1280
Covington, KY 41011
Tel: 513-257-1895
chris@cwiestlaw.com

*Counsel for Plaintiffs-Appellees*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1, and Local Rule 26.1, Plaintiffs/Appellees Krystle and Anthony Perry, individually and on behalf of their minor child K.P. ("Plaintiffs" or "Appellees") make the following disclosures:

1.      Appellees are not a publicly held corporation or other publicly held entity;

2.      Appellees do not have any parent corporations; and

3.      A publicly held corporation or other public entity does not own 10% or more of any stock of Appellees.

Appellees are not a subsidiary or affiliate of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome of this appeal.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES.....................................................................iv

INTRODUCTION...................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES.............................................................3

STATEMENT OF THE CASE AND FACTUAL BACKGROUND...........4

    A. Statutory Background, Including the CVL's Discretionary Medical
       Exemption Scheme....................................................................4

    B. General Factual Background Underlying Plaintiffs' First
       Amendment Claim. ..................................................................8

    C. Plaintiffs' Religious Beliefs Have Been Substantially Burdened By
       the CVL....................................................................................8

    D. Appellants Liberally Permit Comparable Non-Vaccination in
       School Settings for Secular Reasons. ..........................................11

    E. Limitations of the Pharmaceutical Products at Issue ..................12

    F. Procedural History .....................................................................15

SUMMARY OF THE ARGUMENT ......................................................16

STANDARDS OF REVIEW ................................................................18

ARGUMENT ......................................................................................18

I.   THE CVL TRIGGERS STRICT SCRUTINY FOR NUMEROUS
     REASONS.......................................................................................18

A. The District Court Correctly Held the CVL Was Not Generally Applicable Under Fulton....................................................................18

B. The CVL Triggers Strict Scrutiny Under Tandon........................24

C. Under A Hybrid Rights Theory, Mahmoud and Yoder Also Dictate Scrutiny. ...............................................................................35

D. Strict Scrutiny Is Also Triggered Because the CVL Is Amenable to Religious Exemptions ....................................................................39

II.   THE CVL CANNOT SURVIVE STRICT SCRUTINY AS APPLIED HERE ...............................................................................................41

A. Appellants Failed to Demonstrate a Sufficiently "Compelling" Interest, Particularly Not in Plaintiffs' Specific Situation. ..........41

B. The CVL Also Lacks Narrow Tailoring .........................................47

III.  THE CVL FAILS RATIONAL BASIS AS APPLIED TO PLAINTIFFS ......................................................................................54

IV.  THE REMAINING PRELIMINARY INJUNCTION FACTORS HAVE BEEN MET. ..........................................................................55

CONCLUSION .................................................................................56

STATEMENT CONCERNING ORAL ARGUMENT ............................56

CERTIFICATE OF COMPLIANCE.......................................................58

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Air Evac EMS, Inc. v. McVey*,
   37 F.4th 89 (4th Cir. 2022) ..................................................................18

*Bosarge v. Edney*,
   669 F. Supp. 3d 598 (S.D. Miss. 2023) ..............................................21

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011) ..................................................................14, 45

*Buck v. Bell*,
   274 U.S. 200 (1927) ..........................................................................34

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ..................................................................passim

*D.J. v. Mercer County Bd. of Educ.*,
   2013 WL 6152363 (W. Va. Nov. 22, 2013) ........................................46

*Dahl v. Bd. of Trs. of Western Mich. Univ.*,
   15 F.4th 728 (6th Cir. 2021) ..............................................................20

*Does 1-6 v. Mills*,
   16 F.4th 20 (1st Cir. 2021) ................................................................33

*Doster v. Kendall*,
   48 F.4th 608 (6th Cir. 2022) ..............................................................45

*Elrod v. Burns*,
   427 U.S. 347 (1976) ..........................................................................55

*Employment Division v. Smith*,
   494 U.S. 872 (1990) ..................................................................passim

*FCC v. Beach Commc'n,*
  508 U.S. 307 (1993) ................................................................54

*FOP Newark Lodge No. 12 v. City of Newark,*
  170 F.3d 359 (3d Cir. 1999).................................... 21, 23, 24

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) ...................................................... passim

*Goss v. Lopez,*
  419 U.S. 565 (1975) ................................................................10

*Hall v. Virginia,*
  385 F.3d 421 (4th Cir. 2004) ................................................33

*Jacobson v. Massachusetts,*
  197 U.S. 11 (1905) .................................................................34

*Kane v. De Blasio,*
  19 F.4th 152 (2d Cir. 2021) .................................................30

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) .................................................................9

*Lawson v. Gault,*
  828 F.3d 239 (4th Cir. 2016) ................................................24

*Legend Night Club v. Miller,*
  637 F.3d 291 (4th Cir. 2011) ................................................56

*Mahmoud v. Taylor,*
  145 S. Ct. 2332 (2025) ................................................. passim

*Mast v. Fillmore Cnty.,*
  141 S. Ct. 2430 (2021) ..........................................................48

*McCullen v. Coakley,*
  573 U.S. 464 (2014) .........................................................48, 49

*M.V. v. Rockland Cnty. Dep't of Health,*
  53 F.4th 29 (2d Cir. 2022)......................................................26

*Newsom v. Albemarle Cty. Sch. Bd.,*
  354 F.3d 249 (4th Cir. 2003) ..............................................56

*Nken v, Holder,*
  556 U.S. 418 (2009) ............................................................55

*Pashby v. Delia,*
  709 F.3d 307 (4th Cir. 2013) ..............................................18

*Pauley v. Kelly,*
  162 W. Va. 672 (1979) ........................................................10

*Pitt Cnty. v. Hotels.com, L.P.,*
  553 F.3d 308 (4th Cir. 2009) ................................................3

*Plyler v. Doe,*
  457 U.S. 202 (1982) ............................................................54

*Reynolds v. Middleton,*
  779 F.3d 222 (4th Cir. 2015) ..............................................49

*Roman Catholic Diocese v. Cuomo,*
  592 U.S. 14 (2020) ..............................................25, 39, 54

*Seals 1-26 v. Biden,*
  578 F. Supp. 3d 822 (N.D. Tex. 2022) ................................21

*State v. Beaver,*
  248 E. Va. 177 (2022) ........................................................10

*Tandon v. Newsom,*
  593 U.S. 61 (2021) ....................................................... passim

*United States v. Lee,*
  455 U.S. 252 (1982) ............................................................39

*United States v. Virginia*,
   518 U.S. 515 (1996) .............................................................................25

*We the Patriots United States v. Conn. Office of Early Childhood Dev.*,
   76 F.4th 130 (2nd Cir. 2023) ........................................................30, 33

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ................................................................... passim

*Workman v. Mingo Cnty. Bd. of Educ.*,
   419 Fed. App'x 348 (4th Cir. 2011) .....................................................46

## Statutes

28 U.S.C. § 1291 .....................................................................................2

42 U.S.C. § 1331 .....................................................................................2

42 U.S.C. § 1983 .....................................................................................2

42 U.S.C. §§ 300aa-11 ...........................................................................11

W. Va. Code § 16-3-4 ..........................................................................1, 3

W. Va. Code § 16-3-4 (c) .........................................................................5

W. Va. Code § 16-3-4 (e) .........................................................................5

W. Va. Code § 16-3-4 (h) .........................................................................5

W. Va. Code § 16-3-4 (h)(1).....................................................................19

W. Va. Code § 16-3-4 (h)(2).....................................................................19

W. Va. Code § 16-3-4 (h)(4)................................................................7, 19

W. Va. Code § 16-3-4b ...........................................................................28

W. Va. Code § 16-3-5 ................................................................ 42

W. Va. Code § 16-3-5 (a) .......................................................... 25

W. Va. Code § 18-8-1(n) ............................................... 12, 31, 51

W. Va. Code § 18-8-1(n)(8) ....................................................... 16

W. Va. Code § 18-8-2 .................................................................. 9

W. Va. Code § 29B-1-1 ............................................................. 11

W. Va. Code §16-3-4c ......................................................... 28, 29

W. Va. Code §18-2E-9 ................................................................. 8

**Rules**

Fed. R. Evid. 201 ..................................................................... 33

## **INTRODUCTION**

The straightforward First Amendment issue presented in this Appeal is whether a partially unvaccinated child can be excluded from an <u>online</u> educational program, while Appellants allow unvaccinated children possessing medical exemptions to attend school in-person and permit other comparable activities from a risk perspective? A recent string of Supreme Court precedent in *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), *Tandon v. Newsom*, 593 U.S. 61 (2021), and *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025) makes clear that the answer to this question is a resounding "no."

The District Court correctly held West Virginia Code § 16-3-4 (the Compulsory Vaccination Law, hereinafter "CVL") triggered strict scrutiny under *Fulton* as it provides discretionary medical exemptions while categorically excluding religious exemptions, even to virtual students who pose no appreciable risk to Appellants' disease prevention goals. After all, infectious diseases do not spread over the internet. For obvious reasons—including because 45 states offer religious exemptions for in-person classes—the District Court unsurprisingly held the CVL

failed strict scrutiny because it was not narrowly tailored to avoid conflict with Plaintiffs' religious objections to vaccinating their child.

Compounding the CVL's constitutional infirmities, this is an "as applied" challenge to the CVL for virtual student, as opposed to a facial challenge to the law's application in every circumstance. The distinction matters. The question in this Appeal "is not whether the [Appellants] ha[ve] a compelling interest in enforcing its [vaccination mandate] *generally*, but whether it has such an interest in denying an exception" from that requirement to an individual virtual student *specifically*. *Fulton*, 593 U.S. at 541 (emphasis added). As such, the CVL cannot survive even rational basis review.

For these reasons and those more fully detailed below, this Court should affirm the District Court's judgment and Order granting Plaintiffs/Appellees preliminary injunctive relief.

## **JURISDICTIONAL STATEMENT**

The District Court possesses federal question jurisdiction over Plaintiffs' federal claims under the First Amendment, 42 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1291.

2

## STATEMENT OF THE ISSUES

This appeal concerns whether, as applied, West Virginia Code § 16-3-4 unconstitutionally abridges Appellees' rights under the First Amendment. The district court below—grappling with the fact the law was being applied to a virtual student, while Appellants permitted medical exemptions for in-person students—held "yes" and preliminarily enjoined the law under *Fulton*, 593 U.S. 522. This appeal presents several issues:

1.  Is the CVL subject to strict scrutiny review under *Fulton* and related Supreme Court precedent?

2.  Alternatively,[1] is the CVL subject to strict scrutiny review because it is not neutral or generally applicable under *Tandon*, 593 U.S. 61, because it treats secular conduct (non-vaccination for secular reasons) more favorably than "comparable" religious conduct (non-vaccination for religious reasons)?

---

[1] All of the alternative issues were raised below, though were not the basis by which the district court reached its decision. However, this Court "may affirm on any grounds apparent from the record." *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009).

3

**3.** Alternatively, does strict scrutiny apply because the CVL impeded here on the right to educate and make parental decisions in *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and *Mahmoud*, 145 S. Ct. 2332?

**4.** Alternatively, is strict scrutiny triggered here because the CVL is amenable to workable religious exemptions outside of the general applicability/neutrality framework in *Employment Division v. Smith*, 494 U.S. 872 (1990)?

**5.** If strict scrutiny is triggered, does the CVL survive that scrutiny in this as applied challenge to an online student?

**6.** Finally, if strict scrutiny somehow does not apply, can the challenged statue survive rational basis review?

For preservation purposes, Appellees give notice that they intend to seek reconsideration of *Employment Division v. Smith*, 494 U.S. 872 (1990) in the United States Supreme Court.

## **STATEMENT OF THE CASE AND FACTUAL BACKGROUND**

### **A. Statutory Background, Including the CVL's Discretionary Medical Exemption Scheme.**

In West Virginia, it is unlawful for any child to attend "any of the schools of the state or a state-regulated childcare center until he or she

4

has been immunized against chickenpox [i.e., varicella], hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus and whooping cough" and "[n]o person shall be allowed to enter school without" these vaccines. W. Va. Code § 16-3-4 (c) and (e).

While claiming a generalized public health interest in requiring childhood vaccination, West Virginia allows for medical exemptions to the CVL. *See* W. Va. Code § 16-3-4 (h). The statute dictates in relevant part that the health commissioner "is authorized to grant . . . exemptions to the compulsory immunization requirements . . . on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine." *Id.* These medical exemptions are determined on a discretionary basis. (*See* JA045-048 ¶¶ 168-185 (detailing discretionary exemption process).) It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief.

At the first level of the medical exemption review process, West Virginia has delegated private health care providers discretion to determine the variety of circumstances which are eligible for a medical

exemption, and those which are not. (*See* JA146-147 (West Virginia Department of Health and Human Resources Medical Exemption Form).)

The medical exemption process includes even more discretion than may be initially apparent; there are multiple levels of discretionary review whereby government officials and private physicians are empowered to press either the red or the green light on each medical exemption request. At the first level of review, the state has delegated private healthcare providers discretion to determine which of the variety of medical circumstances are eligible for a medical exemption, and which are not. (*See* JA184, JA186-187 ¶¶ 5-12 (Declaration of West Virginia Physician, Dr. Alvin H. Moss, detailing medical exemption criteria and process for obtaining a medical exemption).)

Acting on behalf of the state, physicians conduct an individualized assessment of each request for a medical exemption and have latitude to decide whether to certify the request. (JA186-187 ¶¶ 8-12.) These physicians exercise considerable discretion. (*Id.* ¶ 11.)

At the second level of review, if and when the medical exemption form is signed by the child's doctor, it is then forwarded to the state's Immunization Officer for personalized review. The Immunization Officer

6

then exercises significant discretion when deciding whether to uphold or reverse the physician's decision. (*Id*. ¶ 12.) If the exemption is approved, that student is permitted to attend school without having received all the mandated vaccines. If the Immunization Officer denies the medical exemption, the decision can be appealed to the State Health Officer, who reviews the appeal on a case-by-case basis and determines whether to uphold or reverse the State Immunization Officer's decision. *See* W. Va. Code § 16-3-4 (h)(4). No similar exemption pathway is available to parents with religious objections to vaccination.

In prohibiting religious exemptions, West Virginia is a radical outlier. Appellants have taken it a step further and prohibited religious exemptions for virtual school. Throughout the country, religious exemptions have long been the norm when it comes to school vaccination laws. In fact, forty-five states (plus the District of Columbia) currently offer religious exemptions to their school vaccination laws. (*See* JA042 ¶ 151 n.19 (detailing states with religious exemptions to childhood vaccination laws).)

### B. General Factual Background Underlying Plaintiffs' First Amendment Claim.

The West Virginia Virtual Academy (the "Virtual Academy") is a robust online learning program created by statute under W. Va. Code §18-2E-9. In May of 2022, Mrs. Perry enrolled her minor child, K.P., in the Virtual Academy through the Upshur County School District. (JA025-026 ¶ 69.) For more than 16 months—from August of 2022 through January of 2024—K.P. excelled in learning in the Virtual Learning Academy. (JA026 ¶¶ 70-72.) After K.P. enjoyed a quality education for an extended period, school officials informed Plaintiffs their daughter had to receive the vaccines required under the CVL if she desired to continue her online education. (JA026 ¶ 75.)

Plaintiffs then inquired, on April 1, 2024, whether they could submit a religious exemption to the CVL. (JA027 ¶ 79.) On April 3, 2024, school officials responded that "unfortunately there is still not a religious exemption available" for the Virtual Academy. *Id.*

### C. Plaintiffs' Religious Beliefs Have Been Substantially Burdened By the CVL.

Plaintiffs Krystle and Anthony Perry possess deeply held religious beliefs that prohibit them from vaccinating K.P. (*See* JA022-025 ¶¶ 52-

8

67 (Plaintiffs' sworn declaration, via verified complaint, detailing their religious conflict with vaccinating their child).) After learning that many vaccines have been researched, tested, and developed through the use of aborted fetal cell lines, and that several vaccines required under the CVL contain human genetic material derived from aborted pre-born children, Plaintiffs ceased vaccinating when K.P. was two years old. (JA024 ¶ 65.) For Plaintiffs, to vaccinate K.P. would be to force them into participating in an action with illicit connections to the termination of an innocent life, and into activity that condones abortion. JA024 ¶ 64; *see also Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (the First Amendment protects the right to abstain from "performance of (or abstention from) physical acts" (citation modified)).

Plaintiffs' decision to uphold their religious convictions has entailed significant sacrifices. Plaintiffs face potential criminal prosecution should they fail to educate their daughter. (*See* W. Va. Code § 18-8-2.) However, K.P. has been categorically excluded from West Virginia's educational system, including the irrational and punitive exclusion of K.P. from pursuing an online education through the Virtual Academy. Further, Plaintiff Anthony Perry is 100 percent disabled, and his wife is

the sole provider for the family. (JA026 ¶¶ 73-74.) As such, homeschooling—the only option in West Virginia for children out of compliance with the CVL—also is not a realistic option. With their atypical needs, virtual school was the ideal solution as it allowed Mr. and Mrs. Perry to oversee K.P.'s education with the significant resources provided by Virtual Academy teachers and administrators. *Id.*

West Virginia courts have recognized public education is "a fundamental, constitutional right." *Pauley v. Kelly*, 162 W. Va. 672, 707 (1979); *see also State v. Beaver*, 248 W. Va. 177, 196 (2022) (same). Where a state constitution recognizes the right to public education, a child's right to an education in that state is protected by the Due Process Clause of the Fourteenth Amendment. *See Goss v. Lopez,* 419 U.S. 565, 574 (1975). However, without a religious exemption option in the Virtual Academy, Plaintiffs are deprived of West Virginia's guarantee of a public education for their child, unless they violate their sincerely held religious beliefs and practices.

10

### D. Appellants Liberally Permit Comparable Non-Vaccination in School Settings for Secular Reasons.

Appellants allow for non-vaccination in school settings in a variety of manners that pose a dramatically greater risk than allowing K.P. to continue with her virtual education.

West Virginia permits secular exceptions to its vaccination policy and infectious disease goals in the following areas: (i) allowing thousands of unvaccinated children to attend school who are out of compliance with the CVL;[2] (ii) permitting adults to work in the school system without showing proof of vaccination;[3] (iii) permitting an unlimited number of

---

[2] For example, in response to requests under the West Virginia Freedom of Information Act, W. Va. Code § 29B-1-1, et seq., ("WVFOIA"), the Fayette County Board of Education responded that in the 2023/2024 school year, 440 unvaccinated children were enrolled in in-person classes for more than thirty days. (*See* JA132; *see also* JA138 (Monongalia County School District reporting 147 children out of compliance with the CVL for the 2023/2024 school year).) *See also infra* note 17 (CDC data detailing significant non-compliance rates in West Virginia).

[3] Most adults—who comprise approximately 80% of the population of West Virginia (*see* JA037 ¶¶ 121-123)—would not have been required to receive most of the vaccines required under the CVL when they were attending school since, as of 1986, there were only three routine vaccines in the U.S. It was only after 1986 that there was a significant increase in the number of vaccines now required under the CVL. *See* 42 U.S.C. §§ 300aa-11. These new vaccines were put in place after many adults now working in the school system had cycled through the school system.

11

children to congregate in "learning pods" and "microschools" to be educated without showing proof of vaccination;[4] (iv) allowing medical exemptions;[5] and (v) permitting citizens (adults and children alike) to gather *en masse* for every activity imaginable outside the school setting without showing proof of vaccination.

Appellants' lackadaisical approach to enforcing vaccination requirements statewide, including under the CVL, is consistent with Plaintiffs' specific situation. Appellants allowed K.P. to learn virtually for more than 16 months, before learning of her parents' religious objections to vaccination. (JA026 ¶ 75.) She also regularly attends church and interacts with her peers outside of school, where vaccination status is not required. (JA028-029 ¶¶ 90-91.)

### E. Limitations of the Pharmaceutical Products at Issue

Even if this case were about a broad statewide religious exemption for in-person learning—not, as here, about a single virtual student—

---

[4] Under W. Va. Code § 18-8-1(n), the government permits unvaccinated children—whatever their reasons for declining vaccination—to be educated in "learning pods" and "microschools."

[5] *See, e.g.,* as a few examples of the many medical exemption granted, JA143 (detailing nine medical exemptions to CVL in Harrison County School District for in-person classes); JA138 (recording seven medical exemptions to CVL in Monongalia County School District).

there is record evidence regarding the significant misconceptions of the vaccines required under the CVL that must be addressed. Specifically, most of the vaccines required under the CVL—including the pertussis, tetanus, diphtheria, polio, and meningitis vaccines—do not prevent infection and transmission, but rather operate to provide, at best, an undefined level of personal protection by preventing recipients from experiencing the symptoms of the target pathogens. (*See* JA031-034 ¶¶ 100-111 (citing judicially noticeable sources, specifying that many vaccines required under the CVL operate as personal protection devices).) These vaccines are not designed to create, nor do they result in herd immunity. (JA031-033 ¶¶ 102-108.)

The only remaining vaccines required under the CVL are the MMR and varicella vaccines. K.P. received the first dose of both these vaccines before her parents learned of these vaccines' connections to abortion. (JA034-035 ¶¶ 112-115; *see also* JA182 (K.P.'s Vaccination Records).) The CDC states that a single dose of the MMR is "93% effective" against the disease, as compared to 97% for two doses.[6]

---

[6] *See* CDC, *About Measles,* https://www.cdc.gov/measles/vaccination.html (perama.cc link https://perma.cc/WEQ6-WU2X).

Further, for the varicella (chickenpox) vaccine, CDC states that a single dose of the varicella is 100% effective against "severe varicella," and 82% effective at "preventing any form of varicella," while two doses are "100% effective against "severe varicella," and 92% effective at "preventing all varicella."[7] Hence, as applied to K.P., Appellants are, at best, chasing fractional gains to their public health goals, casually sacrificing Plaintiffs' First Amendment freedoms in the process. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011) (holding that while the government may have a compelling interest in the abstract, that does not mean that it has one "in each marginal percentage point by which" it achieves its general objectives).

Even if K.P. did not already possess 93% protection against measles and 100% protection against severe chickenpox, excluding K.P. from the Virtual Academy will not change the level of vaccination in the community or meaningfully threaten the CVL's objectives. After learning of the MMR and varicella vaccines' connections to abortion, Plaintiffs will not ever inject K.P. with a second dose of these vaccines, regardless of

---

[7] *See* CDC, *About Varicella Vaccines*, https://www.cdc.gov/vaccines/vpd/varicella/hcp/about-vaccine.html (perma.cc link https://perma.cc/VQ3A-A3PH).

whether Appellants continue enforcement of their irrational policy of prohibiting K.P. from learning virtually.

### F.    Procedural History

On July 5, 2024, Plaintiffs lodged an "as applied" challenge to the CVL, focusing on the unique online learning circumstances of the case. (JA060-061 ¶ 252.) After K.P. was ejected from the Virtual Academy, Plaintiffs were left with no realistic educational options for K.P. and moved for preliminary injunctive relief. The District Court granted a preliminary injunction on October 15, 2024. (JA534-601.) Consequently, K.P. is currently enrolled in and thriving in the Virtual Academy.

The District Court determined the CVL triggered strict scrutiny under *Fulton* because there is "significant individualized discretion" contained in West Virginia's medical exemption process, highlighting that "differing outcomes can and are reached depending on the evaluator of the request." (JA586-587.) As such, the District Court held the CVL was not generally applicable under *Fulton*. *Id.*

The CVL failed strict scrutiny for lack of narrow tailoring, with the District Court emphasizing that more narrowly tailored options exist in 45 other states. (JA591.) The District Court further observed that West

Virginia has carved out options in "microschools" and "learning pods," which further demonstrated less restrictive alternatives were available and had already been implemented in West Virginia. (JA592-593 (citing W. Va. Code § 18-8-1(n)(8)).) Defendants then appealed, maintaining that the CVL is constitutional as applied to K.P., a single virtual student.

## SUMMARY OF THE ARGUMENT

The District Court's order should be affirmed. Appellants take issue with only one aspect of the District Court's order: the determination that the CVL violates the First Amendment Free Exercise Clause as applied to Appellees. Appellants do not challenge the District Court's ruling that the remaining preliminary injunction factors were satisfied. (*See* JA595-597.) The District Court correctly held CVL triggers strict scrutiny, a decision this Court can uphold on four separate and distinct grounds.

*First*, the CVL lacks general applicability under *Fulton*, 593 U.S at 537, because it contains a "mechanism" for individualized secular exemptions but does not permit for a similar religious exemption option.

*Second*, the CVL also is neither neutral nor generally applicable under *Tandon,* 593 U.S. at 62, because it treats secular conduct (non-vaccination for secular reasons) more favorably than "comparable"

16

religious conduct (non-vaccination for religious reasons and other permitted activities from a secular perspective).

*Third*, Plaintiffs' constitutional right to bring up their child consistent with their religious beliefs, and fundamental right to educate K.P. while maintaining their religious integrity, invoke "hybrid rights" that trigger strict scrutiny under *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and *Employment Division v. Smith*, 494 U.S. 872 (1990). More recently, in *Mahmoud*, the Supreme Court cemented that strict scrutiny applies where public school policies infringe upon parents' rights to raise their children consistent with religious beliefs. This vehicle to strict scrutiny is independent of *Smith's* general applicability/neutrality framework. *See* 145 S. Ct. at 2351 (applying strict scrutiny where government policy interferes "with a student's religious upbringing in a public school setting.").

*Fourth*, the CVL is amenable to religious exemptions, placing it outside of the concern in *Smith*, 494 U.S. at 888, about creating "anarchy" such that any citizen could potentially access a religious exemption to a neutral and generally applicable law. As such, strict scrutiny must apply on this alternative ground.

17

Further, the CVL cannot withstand strict scrutiny's rigid standards because it is not narrowly tailored. Forty-five states have seamlessly implemented religious exemption options for in-person learning, showing a narrowly tailored solution plainly exists.

Finally, this case concerns a single virtual student, rendering the CVL constitutionally infirm even under rational basis review.

## STANDARDS OF REVIEW

The District Court's issuance of preliminary injunctive relief is reviewed for abuse of discretion. *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 102 (4th Cir. 2022). The related legal conclusions are subject to *de novo* review. *See Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

## ARGUMENT

## I.   THE CVL TRIGGERS STRICT SCRUTINY FOR NUMEROUS REASONS

### A.   The District Court Correctly Held the CVL Was Not Generally Applicable Under Fulton.

The CVL fails the general applicability test because West Virginia's medical exemption scheme invites "the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (citation modified).

18

"[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason." *Id.* (citation modified).

West Virginia maintains a system of customized review for secular medical exemptions. In flagrant violation of the First Amendment under *Fulton*, an analogous exemption mechanism is unavailable to Plaintiffs, who possess religious objections to mandatory vaccination. At the first level of discretionary review, private physicians deputized by the state possess wide latitude to reject or certify each child's medical exemption request. *See* W. Va. Code § 16-3-4 (h)(1); *see also* JA146-147, Physician Certification Form. At the second level of personalized review, assuming the physician certifies the request, the State Immunization Officer has authority to approve or deny the physician's decision. W. Va. Code § 16-3-4 (h)(2). At the final level, the State Health Officer is authorized to uphold or reverse the State Immunization Officer's decision. W. Va. Code § 16-3-4 (h)(4); *see also* JA125, Denial of Medical Exemption Appeal Form.

In practice, medical exemption requests are individually assessed, and the evaluating physician exercises extraordinary discretion when

19

accepting or denying each request. Dr. Alvin Moss, a West Virginia physician intimately familiar with the CVL and its medical exemption scheme, details how medical exemptions are subject to case-by-case discretionary review. (*See* JA186-187 ¶¶ 5-12.) As conclusive evidence of the discretionary nature of the exemption scheme, officials who evaluate exemption requests (after the physician applies his or her own subjective judgment) often overturn the physician's determination. (*See* JA187-190 ¶¶ 12-17.) Differing outcomes can be reached, and are reached, depending on who evaluates the request, which the District Court found triggered strict scrutiny under *Fulton*. (JA586-587.)

The government's unconstitutional bias is woven into the fabric of the CVL because the state maintains a scheme whereby officials can grant individualized exceptions for secular reasons, while prohibiting citizens from even pursuing a religious exemption. By definition, this is the type of discretionary scheme falling within *Fulton's* ambit.

In the compulsory vaccination arena, several sister circuits have held this type of discrimination and preference for secular activity over religious observance invokes strict scrutiny. *See, e.g.*, *Dahl v. Board of Trs. of Western Mich. Univ.*, 15 F.4th 728, 733-34 (6th Cir. 2021)

(vaccination mandate containing defined medical exemptions struck because the case-by-case consideration of exemption requests provoked strict scrutiny under *Fulton*); *Doe v. Bd. of Regents of the Univ. of Colo.*, 100 F.4th 1251, 1273 (10th Cir. 2024); *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (applying strict scrutiny to police department's no facial hair policy where medical exemptions were allowed, but where religious exemptions were categorically banned).[8]

Appellants believe the CVL does not contain a "mechanism for individualized exemptions," ostensibly because medical exemptions are granted subject to "objective criterion". (Opening Brief at 17.) As detailed above, this is not actually the case, and even if it were, the Supreme Court's holdings in *Smith* and *Fulton* are directed at the mere specter of unconstitutional partiality against religious conduct, not whether an

---

[8] *See also Bosarge v. Edney*, 669 F. Supp. 3d 598, 617 (S.D. Miss. 2023) (enjoining Mississippi's childhood vaccination law under *Fulton* because state enacted a medical exemption scheme, while religious exemptions were prohibited); *Seals 1-26 v. Biden*, 578 F. Supp. 3d 822, 838 (N.D. Tex. 2022) (Navy's COVID-19 vaccination policy enjoined where medical exemptions were granted but where religious exemptions were denied).

exemption scheme contains objective criteria by which each is examined on a case-by-case basis. *Smith*, 494 U.S. at 884-86.

Whether strict scrutiny is triggered does not depend on whether a secular exemption is based on objective criteria.[9] Appellants' "objectively defined" criteria theory finds no support in Supreme Court precedents. (Opening Brief at 18.) In *Lukumi*, for example, the animal slaughter laws were subject to objectively defined secular exemptions, such as the "slaughter of animals for food, eradication of insects and pests, and euthanasia." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993). Yet the Supreme Court still found the laws to be not neutral and not generally applicable and, therefore, subject to strict scrutiny. *Id.* at 542*; see also Fraternal Ord. of Police*, 170 F.3d at 366 (3d Cir. 1999) (Alito, J.) (law subject to categorical "medical" and "undercover exception" exemptions not neutral and generally applicable where religious exemptions prohibited).

Moreover, *Fulton* also involved well-defined criteria, just as West Virginia's CVL does; the scheme in *Fulton* nonetheless triggered strict

---

[9] To be clear, Plaintiffs maintain that medical exemptions to the CVL are *not* based on objective criteria.

scrutiny. The checklist for receiving a possible exemption in *Fulton*, like here, was based on secular reasons for opting out of the policy and was examined on a case-by-case basis. 593 U.S. at 530 (the "agency must conduct a home study during which it considers statutory criteria").

Regardless, what the First Amendment is concerned with is not how discretionary an exemption is (although that is clearly the case here), but rather whether the scheme allows for "the prospect of the government's deciding that secular motivations are more important than religious motivations." *Fraternal Ord. of Police*, 170 F.3d at 365; *see also Fulton*, 593 U.S. at 537.

This concern can be present whether the exemption is phrased objectively or subjectively and, in fact, is magnified when the government grants a secular-based exemption to an entire category of claimants using objective terms, while categorically prohibiting religious exemptions.[10] *See Lukumi,* 508 U.S. at 542 ("All laws are selective to some extent, but *categories* of selection are of paramount concern when a law has the

---

[10] For example, if Appellants instituted a policy that stated *only* Caucasian males (objective criteria) may apply for employment, without affirmatively stating "African American females may not apply," such a policy would invoke virtually identical constitutional concerns as exist here.

incidental effect of burdening religious practice." (emphasis added));
*Fraternal Ord. of Polic*, 170 F.3d at 365 (unconstitutionality is "only
further implicated when the government . . . actually creates a categorical
exemption" for secular reasons but prohibits them for religious reasons).

### B.    The CVL Triggers Strict Scrutiny Under <u>Tandon</u>.

Even if Appellants could somehow evade strict scrutiny under
*Fulton*, the CVL lacks neutrality and general applicability under
*Tandon*, 593 U.S. 61.[11] The CVL is neither neutral nor generally
applicable because it treats secular activity more favorably than the
religious exercise at issue: non-vaccination in virtual school. The
Supreme Court recently reiterated that a law flunks *both* the general
applicability and neutrality tests when the government "treat[s] *any*
comparable secular activity more favorably than" the religious exercise
the government prohibits. *Tandon*, 593 U.S. at 62 (emphasis in original).

When assessing whether religious and secular conduct is
"comparable" in the infectious disease context, courts are "concerned with

---

[11] While the District Court did not enjoin the CVL as to Plaintiffs under
*Tandon,* this Court may affirm the district court "on any basis fairly
supported by the record." *Lawson v. Union Cty. Clerk of Court*, 828 F.3d
239, 247 (4th Cir. 2016).

the risks [the] activities pose, not the reasons why" the activities are carried out. *See Tandon*, 593 U.S. at 62; *see also Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 17 (2020) (asking whether secular activities either "have contributed to the spread of COVID–19" or "could" have presented similar risks as the prohibited religious activity). Thus, whether two activities are "comparable" for purposes of the Free Exercise Clause "must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62.

The government's officially stated justification for the CVL is to ensure a "cost-effective means of disease prevention." W. Va. Code § 16-3-5(a). In a naked attempt to evade strict scrutiny, Appellants attempt to re-define the asserted government interest by the legislature as a hyper-broad goal of maintaining "our children's health and well-being." (Opening Brief, at 20.)[12] This framing is nonsensical. The government's objective at issue is counteracting the spread of infectious diseases; any

---

[12] Appellants' newly constructed justifications for the CVL are nothing more than "post hoc rationalizations" that cannot legitimately be relied upon now. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the" differences between comparator groups at issue).

25

sub-objective Appellants propose is necessarily dependent on satisfying that foundational goal.

Further, even if Appellants could legitimately advance an amorphous government interest in protecting "children's health and well-being",[13] the CVL absolutely allows non-vaccination in a multitude of situations that endanger this goal to a considerably greater degree than allowing K.P. to learn virtually. Where the government permits secular exceptions to a policy seeking to curtail the spread of infectious diseases, or in public health more generally, it is the burden of the government to "show that the religious exercise at issue is more dangerous" than the secular activity the government permits. *Tandon*, 593 U.S. at 63.

Appellants can never make this showing. When examining regulations intended to counteract the spread of infectious diseases, the

---

[13] In the context of disease prevention regulations that differentiate between religious and secular conduct, courts have warned against such redefining of the official government interest. This is because "the general-applicability test embraces a purposivist approach that is vulnerable to manipulation and arbitrariness" whereby the government can manipulate the asserted state interest to evade strict scrutiny by framing it in hyper-generalized terms, such as the promotion of "public health—so that an exception would rarely undermine" such an interest. *See M.V. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 42 (2d Cir. 2022) (Park, J., concurring) (citation modified).

Supreme Court has recently made abundantly clear that: (1) the government cannot credibly cabin its objectives to regulating activity at some physical locations, but not others; and (2) when conducting the comparability analysis, courts must do a direct comparison between the aggregation of individual secular behaviors the government permits, and the religious exercise it prohibits. *See id.* at 62-63. If the cumulative effect of the secular activities the government allows undermines the government's stated interest in a similar manner as the religious activity the government prohibits, the regulation triggers strict scrutiny. *Id.*

Despite claiming an interest in child welfare and in preventing transmission of infectious diseases in school settings, Appellants permit secular exceptions to vaccination—including for in-person attendance—while barring Plaintiffs, whose motivations for non-vaccination are religious, from educating their child virtually. Using government's logic about the risk of non-vaccination, a child possessing a medical exemption who attends school in person poses a dramatically greater risk than would allowing K.P. to continue her education in the Virtual Academy

with a religious exemption.[14] Critically, West Virginia has granted medical exemptions for students attending in-person classes for the 2023/24 school year. (*See* JA037-038 ¶¶ 124-126.) This plainly treats at least some "comparable secular activity more favorably" than the religious exercise at issue. *Tandon*, 593 U.S. at 62.

Moreover, Appellants cannot credibly assert a compelling interest in mitigating against infectious disease by way of vaccination in school when it leaves more urgent infectious disease threats unaddressed. In fact, West Virginia has *prohibited* COVID-19 vaccine requirements, including by school employers and for students, and even by covered private employers for religious and medical reasons. W. Va. Code §§ 16-3-4b, 16-3-4c. All while COVID has been credibly cited as the most threatening pandemic in the last century. However, West Virginia has determined that religious exemptions to COVID-19 vaccination

---

[14] Again, four of the six mandated vaccines do not prevent infection and transmission and are for personal protection alone. (*See* JA31-34 ¶¶ 101-111.) Whatever risk-based interest the state claims is constrained to the two vaccines actually capable of stopping infection and transmission. Otherwise, the government could mandate any medical procedure it deems beneficial to the recipient (such as weight loss drugs). Critically, K.P. has received doses of the two remaining vaccines that are capable of preventing infection and transmission. (JA034-035 ¶¶ 112-115; *see also* JA182 (K.P.'s Vaccination Records).)

requirements are appropriate for millions of adults in work settings and does not require COVID-19 vaccinations for attendance in school. And West Virginia prohibits government entities from even asking about COVID-19 vaccination as a condition to entry or gathering in government buildings or events. W. Va. Code § 16-3-4c. Notably, West Virginia reported more than 7,500 deaths in West Virginia through the end of 2022 for COVID-19,[15] yet Appellants do not even cite to anything more than a mere specter of an infectious disease threat attributable to the pathogens targeted by the CVL.

Appellants also conveniently ignore that this is an "as applied" challenge. Plaintiffs have been clear throughout the course of this litigation that they are challenging the constitutionality of the CVL only "as applied to" to their child, who is learning virtually. (JA020 ¶ 45 ("[T]his is an 'as applied' challenge. Plaintiffs assert the CVL's specific application to K.P.'s situation violates the First Amendment.").) This stands in stark contrast to the challengers in *We the Patriots* (a case heavily relied upon by Appellants). Specifically, the plaintiffs in that case

---

[15] *See* West Virginia Department of Health, *COVID-19 Daily Update* (Dec. 30, 2022), https://dhhr.wv.gov/News/2022/Pages/COVID-19-Daily-Update-12-30-2022.aspx (perma.cc link https://perma.cc/HQC8-VWE8).

argued that Connecticut's school vaccination law—on its face, in all of its applications—violates free exercise. *See We the Patriots United States v. Conn. Office of Early Childhood Dev.*, 76 F.4th 130, 135-36 (2nd Cir. 2023); *see also Kane v. De Blasio*, 19 F.4th 152, 174-75 (2d Cir. 2021) (explaining the difference between as-applied and facial challenges and explaining that plaintiffs were likely to succeed on the former but not the latter because of those differences).

The "as applied" nature of this case matters. It requires answering the question of whether a religious exemption for a single virtual student compared to the numerous medical exemptions Appellants permit for in-person school. To ask the question is to answer it. A student unvaccinated for secular reasons does not "pose a lesser risk of transmission than [K.P.'s] proposed religious exercise" – a religious exemption in virtual school. *Tandon*, 593 U.S at 63.

Irrespective of the comparable secular activity allowed through granting many medical exemptions, strict scrutiny is provoked under *Tandon* for additional reasons. Appellants permit non-vaccination in a kaleidoscope of situations that, each in isolation, present a considerably greater risk to the state's goals than the religious exercise at issue.

*First*, even if Appellants public health goals could logically be restricted to children, and exclusively in a school setting during school hours, West Virginia also permits unvaccinated children to be educated in unlimited numbers in "learning pods," and "microschools", school settings where children intermingle on a daily basis. Under W. Va. Code § 18-8-1(n), the government permits unvaccinated children—whatever their reasons for declining vaccination—to be educated in high numbers and in close settings in these learning pods and microschools. This is an elbow-to-elbow class setting that poses a dramatically greater risk to Appellants' disease prevention goals than permitting a virtual student to learn online. Plaintiffs, however, are unable to participate in a learning pod because of Mrs. Perry's work schedule and Mr. Perry's medical conditions. And, of course, the state permits homeschooled children to remain unvaccinated.

*Second*, Appellants permits adults working in the school system— teachers, administrators, lunchroom staff, bus drivers, etc.—to completely disregard the CVL's requirements. Most adults have never been required to receive the full menu of vaccines required under the CVL. (*See* JA037 ¶¶ 121-23 (detailing background of why adults—which

31

comprise approximately 80 percent of the West Virginia's population—
have never been required to comply with most of the vaccines required
by the CVL).) Yet, these adults daily interact with schoolchildren, while
Appellants prohibit K.P. from learning virtually with a religious
exemption.

*Third*, Appellants allow functional exemptions to many hundreds,
if not thousands, of unvaccinated children through non-enforcement of
the CVL. For example, the Fayette County Board of Education permitted
440 unvaccinated children to remain enrolled in in-person classes for
more than thirty days. (JA132.) The Monongalia County School District
reported 147 children out of compliance with the Compulsory Vaccination
Law were enrolled in in-person classes for more than thirty days.
(JA138.) The Upshur County School District—the district Appellees'
child, K.P., enrolled in the Virtual Academy, and the district in which her
virtual education was administered—reported that 46 unvaccinated
children who are out of compliance with the CVL were enrolled in in-
person classes for more than thirty days. (JA140.) And these are just a

few examples of thousands of children Appellants permit, per CDC records, to be educated while non-compliant with the CVL.[16]

In isolation, any one of these non-vaccination scenarios the government allows fatally undermines every possible objective undergirding the CVL. Collectively, the aggregation of individual behaviors the government allows present an infinitely greater risk to West Virginia's purported objectives than would allowing K.P to pursue a religious exemption to learn from her own home.

Because neither case confronted a virtual student, Appellants reliance on *Does 1-6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021) and *We The Patriots USA, Inc. v. Connecticut Off. Of Early Childhood Dev.*, 76 F.4th 130, 156 (2d. Cir. 2023) is misplaced. Moreover, neither case examined circumstances where the government permitted non-vaccination in the

---

[16] Centers for Disease Control and Prevention, *Vaccination Coverage with Selected Vaccines and Exemption Rates Among Children in Kindergarten — United States, 2021–22 School Year*, 72(2) Morbidity & Mortality Weekly Rev. 26 (January 13, 2023), cdc.gov/mmwr/volumes/72/wr/mm7202a2.htm (perma.cc link https://perma.cc/5EMM-WTEZ) (detailing grace period or provisional enrollment of 3.8% and 3.5% non-compliance with regards to the MMR vaccine, for example, amongst West Virginia kindergarteners in the 2021-22 school year). Courts may take judicial notice of information contained in official government websites under Rule 201 of the Federal Rules of Evidence. *See, e.g.*, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

variety of manners that Appellants permit here. [17] And again, Appellants ignore this case is an as applied challenge in which the child at issue has received most of the required vaccines and is being educated _online_. (JA054 ¶ 218 (verifying that "K.P. has received doses of the vaccines required under the CVL" and emphasizing Appellants, therefore, "can only, at best, point to miniscule gains to its disease mitigation goals by forcing K.P. to receive the few additional doses she lacks."); _see also_ JA182 (K.P. vaccination records).) That takes additional force because—as common sense dictates—none of the diseases that the CVL seeks to protect against are transmitted over the internet, and Appellants certainly have never suggested as much.

---

[17] Because the challenged statute is neither neutral nor generally applicable under the Supreme Court's 2021 decisions in _Tandon_ and _Fulton_, Appellants' apparent reliance (Opening Brief, at 12-14) on _Jacobson v. Massachusetts_, 197 U.S. 11 (1905) and its related ancient progeny is outdated and misplaced. _Jacobson_ dealt with mandatory vaccination and a fine under highly deferential substantive due process law, and, importantly, occurred _**prior**_ to incorporation of the Bill of Rights (and the First Amendment) against the states. Put simply, any force _Jacobson_ still retains is limited to the context of responding to an ongoing "emergency," 197 U.S. at 27, and decisions adopting broader applications of _Jacobson_ have been universally condemned, _see, e.g._, _Buck v. Bell_, 274 U.S. 200, 207 (1927) ("The [_Jacobson_] principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes.").

The foregoing dynamics also fundamentally change the risk analysis and render Appellants' citation to and reliance on public health articles irrelevant. (*See* Opening Brief, 21-22 (arguing strict scrutiny should not apply to this specific case because of hypothetical risks of exemption rates increasing, and purported risks of endangering herd immunity levels).)

In sum, West Virginia allows a variety of comparable secular activities that undermine its disease mitigation efforts to much greater degree than permitting Plaintiffs the option to pursue a religious exemption to attend online school would. In K.P.'s situation, it is clear the government has made an unconstitutional value judgment that secular motivations for opting out of vaccination are perfectly acceptable, but that religious reasons will not be tolerated—even in the virtual school setting. As such, *Tandon* dictates strict scrutiny on separate and distinct grounds.

### C. Under A Hybrid Rights Theory, <u>Mahmoud</u> and <u>Yoder</u> Also Dictate Scrutiny.

Strict scrutiny is also triggered—regardless of *Smith's* general applicability/neutrality framework—where free exercise "rights are violated by government policies that substantially interfer[e] with the

religious development of children." *Mahmoud*, 145 S. Ct. at 2350. Appellants fail to address that hybrid rights parental rights are at issue under *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025).

Some courts have read *Yoder* as constrained to its facts. But *Mahmoud* emphatically rejected a narrow reading of *Yoder*, recently holding that: "[T]here is no reason to conclude that the [*Yoder*] decision is 'sui generis' or uniquely 'tailored to [its] specific evidence,' as the courts below reasoned." *Id.* at 2357.

The Supreme Court began its analysis of *Mahmoud* by observing that "we have long recognized the rights of parents to direct the religious upbringing of their children." *Id.* at 2351 (citation modified). The Court explained that "we have held that those rights are violated by government policies that 'substantially interfer[e] with the religious development' of children." *Id.* at 2351. The Supreme Court then explained that "[a]t its heart, the Free Exercise Clause of the First Amendment protects 'the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of' religious acts." *Id.* at 2351. "And for many people of faith across the country, there are

few religious acts more important than the religious education of their children." *Id.*

The Court observed that the state could not compel practices barred by religion to attend school. *Id.* at 2352. And it observed that the religious practice at issue must be measured against the requirement at issue that the state places on the parent and child to attend school. *Id.* At bottom, the analysis must measure whether the requirement constitutes a "pressure to conform" to the state's requirements in violation of religion. *Id.* at 2355. "The question in cases of this kind is whether the ... requirement ... would 'substantially interfer[e] with the religious development' of the child or pose 'a very real threat of undermining' the religious beliefs and practices the parent wishes to instill in the child." *Id.* at 2356 (quoting *Yoder*, 406 U.S. at 218).

The Supreme Court also explained that it is no answer to have the parents educate their children at home or elsewhere, explaining "when the government chooses to provide public benefits, it may not "condition the availability of [those] benefits upon a recipient's willingness to surrender his religiously impelled status." *Mahmoud*, 145 S. Ct. at 2359. That is precisely what has occurred here. (*See* JA053 ¶ 216 (detailing

37

Plaintiffs' situation of being forced "to violate their sincerely held religious beliefs by injecting K.P. with the required vaccines as a condition of education.".)

According to the Supreme Court, "It is both insulting and legally unsound to tell parents that they must abstain from public education in order to raise their children in their religious faiths, when alternatives can be prohibitively expensive and they already contribute to financing the public schools." *Mahmoud*, 145 S. Ct. at 2360. Again, the fundamental question is whether the state's policies pose "a very real threat of undermining" the religious beliefs and practices that the parents wish to instill in their children. *Id.* at 2361.

Plaintiffs specifically pleaded (JA060 ¶¶ 248-250) and argued in briefing below (JA170-171) that *Yoder* dictated strict scrutiny under a hybrid rights theory. Here, Plaintiffs merely ask to direct the education of their daughter and obtain an education for her, without violating her faith, by enrolling their child in online classes, not in-person classes.

This Appeal fits cleanly in the four corners of *Mahmoud* and *Yoder*. The Hobson's choice that is central to a claim under *Yoder* and *Mahmoud* is equally present here. Appellants are compelling the same sort of choice,

which is that Plaintiffs can either forgo educating their child, or instead comply with the state's vaccination regime that violates Plaintiffs' faith.

*Mahmoud* makes clear that the hybrid right here is violated. In response, and citing no authority that supports the proposition, Appellants seem to suggest that there is a public health exception to the right. Yet the Supreme Court declined to engraft such an exception to the Free Exercise clause in *Roman Catholic Diocese, v.* 592 U.S. 14, and *Tandon*, 593 U.S. 61. Strict scrutiny is thus triggered under *Yoder* and *Mahmoud*.

### D.      Strict Scrutiny Is Also Triggered Because the CVL Is Amenable to Religious Exemptions

The CVL also falls outside of *Smith* because it is readily amenable to workable religious exemptions. In that way, the CVL is fundamentally unlike the controlled substances law at issue in *Smith*.

In applying rational basis review in *Smith*, this Court emphasized that the controlled substances law at issue was not amenable to workable exemptions. To permit such exemptions would be "to permit every citizen to become a law unto himself." *Smith*, 494 U.S. at 879 (citation modified). Such a state of affairs would, in the majority's words, "be courting anarchy." *Id.* at 888; *see United States v. Lee*, 455 U.S. 252, 260 (1982)

(denying exemption to Social Security taxes because "the tax system could not function" with religious exemptions).

In the three and a half decades since *Smith*, "experience has disproved the *Smith* majority's fear that retention of the Court's prior free exercise jurisprudence would lead to 'anarchy.'" *Fulton*, 593 U.S. at 554 (Alito, J., concurring). That is particularly true when it comes to religious exemptions from school vaccine requirements.

At present, 45 states plus the District of Columbia offer religious exemptions to their school vaccine requirements. Because 90% of states and Washington, D.C. have been able to accommodate religious practice without "courting anarchy" for more than 50 years, the CVL is amenable to exceptions. *Smith*, 494 U.S. at 888.

This widespread experience with workable religious exemptions to school vaccine requirements indicates that the provision of such exemptions is not "infeasible or unworkable" and that strict scrutiny in the Free Exercise context can apply outside of *Smith's* general applicability/neutrality framework. *See, e.g., Mahmoud*, 145 S. Ct. at 2362. And it also indicates that, as in *Yoder*, the categorical denial of religious exemptions is a "relatively recent development." *Yoder*, 406 U.S.

at 226. Strict scrutiny is thus also triggered because the CVL is amenable to exceptions.

## II.   THE CVL CANNOT SURVIVE STRICT SCRUTINY AS APPLIED HERE

The Supreme Court has recently emphasized that, just because a law targets infectious disease, strict scrutiny "is not watered down"; it "really means what it says." *Tandon*, 593 U.S. at 65 (citation modified). The CVL cannot survive strict scrutiny for two overarching reasons:

### A.   Appellants Failed to Demonstrate a Sufficiently "Compelling" Interest, Particularly Not in Plaintiffs' Specific Situation.

Start here: strict scrutiny places a burden upon the government, not Appellees, to "establish that the challenged law satisfies strict scrutiny." *Tandon*, 593 U.S. at 62. Moreover, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of [disease]." *Id.* at 63 "Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same

precautions are applied." *Id.* "Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.*

In the same manner, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 593 U.S. at 541. And the "question, then, is not whether the [Appellants] ha[ve] a compelling interest in enforcing [the CVL] generally, but whether it has such an interest in denying an exception to [Plaintiffs]" specifically. *Id.*

Appellants have asserted that mandatory vaccination of schoolchildren is allegedly unquestionably "compelling" for purposes of satisfying strict scrutiny in a virtual school setting. But even if that *post-hoc* rationalization were so (despite the West Virginia legislature's contradictory justification that the interest was ensuring a "cost-effective means of disease prevention," W. Va. Code § 16-3-5, the state would have required <u>all</u> children in the state to be vaccinated, including those being homeschooled, the thousands of students being educated in close settings in learning pods, those that attend public sporting events, and others.

42

Without doing so, Appellants cannot credibly assert a compelling interest in denying a religious exemption to K.P.

This is because, when First Amendment violations are at issue, the government cannot support a purported compelling interest when it actively and fundamentally undercuts its public health goals. *See Church of Lukumi*, 508 U.S. at 543-47. As already explained throughout, it is clear that universal vaccination is not a public health imperative because, once again, West Virginia allows for non-vaccination for secular reasons in almost every circumstance imaginable, including in-person school settings.

Given the *Fulton* Court's directive that a compelling interest in the abstract will not satisfy strict scrutiny when First Amendment freedoms are at issue, Appellants' assertion of such an interest in the abstract is insufficient. Here, Appellants must demonstrate its compelling interests are satisfied with respect *to the individual*. *See, e.g.*, *Fulton*, 593 U.S. at 524 (the question "is not whether the [Government] has a compelling interest in enforcing its [vaccination mandate] generally, but whether it has such an interest in denying an exception" from that requirement to an individual plaintiff specifically).

43

This "to the plaintiff" standard can never be met here, considering the assortment of activities the government permits, discussed *supra*, that fatally undermine the government's disease prevention goals. Having shown it can accomplish its public health goals without universal vaccination, including in educational settings, Appellants can likewise allow and parents to pursue a formal education for their children with a religious exemption to the CVL.

Here, of course, the burden Appellants face is even more daunting when we deal with an online student, and so the usual arguments by the government, i.e., the protection of others within the school, are neutered. K.P. poses no risk whatsoever to others by accessing an online education in her home, and Defendants do not even attempt to suggest disease can be spread via the internet (because such a proposition is absurd on its face).

Additionally, by any reasonable measure, the state's objectives have already been fulfilled: West Virginia boasts one of the highest childhood vaccination rates in the Nation. Thus, the state's myopic vaccination drive in this case is apparently directed at a tiny subset of

44

online students who remain unvaccinated for religious reasons.[18] And again, as applied to K.P., she has received most all vaccines required under the CVL.

As such, Appellants are irrationally chasing fractional percentage gains in K.P.'s case. While the government may "have a compelling interest" in the abstract, that does not mean that it has one "in each marginal percentage point by which" it achieves its general goals. *Brown*, 564 U.S. at 803 n.9; *see also Doster v. Kendall,* 48 F.4th 608 (6th Cir. 2022) (holding the government did not possess a compelling interest in vaccinating a small fraction of airmen who declined vaccination for religious reasons).

Moreover, even when analyzed on a broad, abstract level, Appellants' goals are insufficiently compelling because of the assortment of activities the government permits, such as: (i) allowing for medical

---

[18] Appellants fight vigorously to prohibit K.P. from receiving an online education, while, through non-enforcement of the CVL, it permits thousands of unvaccinated children to access the educational system. *See supra* note 17 (discussing non-compliance rates in West Virginia). The government could actually accomplish its public health goals by enforcing the law against children without religious objections to vaccination, but who are nonetheless permitted to attend in-person school (whereas it cannot with Plaintiffs, as they have demonstrated they will not vaccinate their child in any circumstance due to their religious beliefs).

45

exemptions; (ii) West Viriginia's lax enforcement of the CVL; (iii) the presence of unvaccinated adults working in the school system; (iv) allowing unlimited numbers of unvaccinated children to be educated in learning pods and microschools; and (v) and allowing adults and children to engage in every activity imaginable without showing proof of vaccination. Therefore, having severely undermined its stated goals in a variety of ways, the Appellants cannot now credibly argue its interests are sufficiently compelling to trample on Plaintiffs' First Amendment freedoms.

For these reasons, Appellants' reliance on *Workman v. Mingo Cnty. Bd. of Educ.*, 419 Fed. App'x 348 (4th Cir. 2011) (unpublished) and *D.J. v. Mercer County Bd. of Educ.*, 2013 WL 6152363, *4 (W. Va. Nov. 22, 2013) for the proposition that a compelling state interest exists is inapposite. Put simply, *Workman* did not hold that government possesses a compelling interest in forcing parents of a *virtual student* to violate their religious convictions. Moreover, the severe under-inclusivity issues raised directly above were not present or were not raised in *Workman.*

Finally, *Workman* and *Mercer County* were decided before the directly on point Supreme Court precedent in *Mahmoud, Tandon,* and

46

*Fulton*. These decisions also predated the recent addition for West Virginian families to educate unvaccinated children in learning pods.

Appellants have thus failed to demonstrate the state's interests are sufficiently compelling to satisfy strict scrutiny, especially as applied to these Plaintiffs. West Virginia is requiring that Plaintiffs violate their religious convictions as a prerequisite to educating their child in an online setting, while the state is actively undercutting its purportedly vital interests in many ways. For this reason alone, the CVL cannot survive strict scrutiny.

## B.    The CVL Also Lacks Narrow Tailoring

The CVL fails strict scrutiny on alternative grounds because it is not narrowly tailored in K.P.'s case. When strict scrutiny applies, a government policy survives "only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 593 U.S. at 541.

Appellants bear the burden—and failed to show—that CVL is narrowly tailored. Put another way, means less restrictive of Plaintiffs' religious freedoms—such as quarantining in the event of an outbreak—

47

plainly exist. Appellants failed to consider such options. *McCullen v. Coakley*, 573 U.S. 464, 495 (2014) (detailing the government's burden to explore and identify less restrictive alternatives). Given this incredibly high standard, a law will survive strict scrutiny "only in rare cases." *Church of Lukumi,* 508 U.S. at 546.

Appellants argue that categorically prohibiting unvaccinated children whose families have religious beliefs in conflict with vaccination from attending school—even remote school—is the "narrowly tailored" option available to accomplish the state's public health objectives. (Opening Brief, 24-25.) That simply is not a credible position given that forty-five states allow religious exemptions. *See Mast v. Fillmore Cnty.,* 141 S. Ct. 2430, 2433 (2021) (stating the government's failure to consider less restrictive alternatives to similar public health policies in other states was highly relevant to the strict scrutiny analysis (Gorsuch, J., concurring)).

That is even more absurd when one considers that here we deal with an online student. K.P. can be at home if her parents homeschool her and/or she can go to a learning pod and be educated in an in-person group setting, but, according to Defendants, she cannot attend virtual

online school provided by the state. In fact, one less restrictive means of attempting to accommodate religious practice and conflict with the CVL could be permitting the exact activity that K.P. is engaged in: being educated virtually.

Appellants make no attempt to address Plaintiffs' argument that virtual school is itself a less restrictive alternative. (JA171 (Plaintiffs highlighting that "less restrictive means—such as quarantining, which de facto occurs in virtual school—plainly exist").) Appellants also do not address Plaintiffs' position—which the District Court accepted (*see* JA591)—that 45 states demonstrated means less restrictive of an outright ban on religious exemptions are available and have been seamlessly implemented throughout the Country. Finally, Appellants also fail to explain how it "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494; *see also Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015) (holding that a regulation fails strict scrutiny where the government never tried or considered less restrictive alternatives).

In addition, where, as here, utilization of less restrictive means is required, the government "may no more create an underinclusive statute,

49

one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Lukumi*, 508 U.S. at 578. The CVL cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the government objectives it purportedly attempts to achieve. The CVL is glaringly underinclusive for four primary reasons:

*First*, the CVL only applies in only one of the many settings where transmission may occur: schools. The CVL does not require vaccination for children (or anyone else, for that matter) to participate in any number of other gatherings in other places where they may congregate or interact—such as attending West Virginia Mountaineers' basketball game (or the local high school gym for a sporting event), participation in youth wrestling leagues, attending Sunday school, or reporting for jury duty.

*Second*, the CVL only applies to one group of people who may transmit in schools: children. The CVL does not require vaccination for any of the other people who congregate and interact with those children in schools every day—such as teachers, administrators, aides, and

lunchroom staff. Notably, very high numbers of adults in the state, who comprise over 80% of West Virginia's population,[19] have never been required to inject the full menu of vaccines required under the CVL because most required vaccines were not required until after 1986. These adults are exempt from the CVL. It is only students who must "endanger their own salvation" through compelled vaccination. *Yoder*, 406 U.S. at 209.

*Third*, even if the Appellants' infectious disease related goals could somehow logically be restricted to children, and exclusively in a school setting during school hours, West Virginia permits unvaccinated children to be educated in unlimited numbers under W. Va. Code § 18-8-1(n) in "learning pods," a school setting where children intermingle during school hours.

*Fourth*, the CVL—on its face and as applied by Appellants—allows for many exceptions, further exposing the regulation's pronounced under-inclusivity. The CVL still permits medical exemptions to its vaccination requirements, and many medical exemptions are granted. (*See, e.g.,*

---

[19] *See* UNITED STATES CENSUS BUREAU, *QuickFacts, West Virginia*, https://www.census.gov/quickfacts/fact/table/WV,US/PST045223.

JA138 and JA143 (verification of medical exemptions granted).) And Appellants also take a very relaxed enforcement approach (other than against parents with religious objections to vaccination), allowing many hundreds of children—as a practical matter through non-enforcement— to discard the CVL's requirements. (*See* JA132 and JA138 (evidence of significant non-compliance rates).)

Through circular reasoning, Appellants contend the CVL is not underinclusive because the CVL is directed only to children in school, and thus that mandatory vaccination of children in school is not underinclusive relative to that goal. (Opening Brief, 24-25.) In other words, it is Appellants' position that the CVL is not underinclusive because it only applies in situations where it applies; but this is the precise reason the law is underinclusive. By applying to only a small cohort of the population, it fails to address the threats it purportedly attempts to counteract.

Appellants then tepidly advance the theory that the CVL can survive strict scrutiny because K.P. could hypothetically play organized sports through school, while children in learning pods and microschools cannot. (Opening Brief, 25.) But K.P. does not play sports (*see* JA322),

52

and even if she did, she would be able to play in recreational leagues not associated with the schools, notwithstanding the CVL, amplifying, not justifying, the CVL's severe under-inclusivity. And in all events, the injunctive relief here permitted her to attend virtual school, not more broadly to engage in organized sports.

The CVL is also glaringly overbroad, which Appellants also fail to address. When a law is over-inclusive, its "broad scope . . . is unnecessary to serve the interest, and the statute fails [strict scrutiny] for that reason." *Lukumi*, 508 U.S. at 578.

As applied to K.P., the CVL is overbroad for four primary reasons: (i) it requires at least four vaccines that do not, in fact, prevent spread or transmission in schools; and in any event, K.P. has received doses of the two injections that do prevent infection and transmission; (ii) the government has already achieved a remarkably high vaccination rate for in-person classes; (iii) assuming the vaccines are as effective as Appellants apparently contend, the overwhelming majority of schoolchildren who are vaccinated are protected against the targeted pathogens; and (iv) there is no evidence that sweeping K.P. and other

virtual students under the coverage of the CVL will materially advance the state's infectious disease-related goals.

Notably, there has not been any significant outbreak of infectious diseases in the state, and especially not ones attributable to unvaccinated virtual students seeking a religious exemption. *See Roman Catholic Diocese*, 592 U.S. at 18 (finding COVID-19 regulation failed strict scrutiny where "there [was] no evidence that the applicants have contributed to the spread of COVID-19"). Even if Appellants pointed to a recent outbreak in West Virginia (they have not), or something beyond a hypothetical threat of one, virtual students like K.P. have pre-quarantined.

Because it cannot withstand strict scrutiny review on multiple fronts, the CVL is plainly unconstitutional. The District Court, therefore, properly enjoined its enforcement against K.P.

## III.  THE CVL FAILS RATIONAL BASIS AS APPLIED TO PLAINTIFFS

Considering the manifest irrationality of enforcing the CVL against K.P. with respect to the Virtual Academy, the CVL also cannot survive rational basis review. *See FCC v. Beach Commc'n*, 508 U.S. 307, 313 (1993); *see also Plyler v. Doe*, 457 U.S. 202, 241 (1982) (holding Texas law

prohibiting children of undocumented immigrants from attending school failed rational basis review, reasoning it is against the state's interest to cultivate a population of "illiterate persons").

Even under Appellants' theory of the case, mandating vaccines for online learning yields no appreciable risk of disease transmission in school. The policy bears no rational relation to Appellants' public health goals for schoolchildren as communicable diseases do not transmit virtually. Consequently, Appellants' rigid enforcement of the CVL against K.P. must fail even rational basis review.

## IV.    THE REMAINING PRELIMINARY INJUNCTION FACTORS HAVE BEEN MET.

Appellants apparently concede the District Court correctly held the remaining preliminary injunction factors were satisfied. And with good reason. These factors collapse into a single inquiry: whether a First Amendment violation has occurred. *See Elrod v. Burns,* 427 U.S. 347, 373 (1976) (irreparable prong element satisfied as a matter of law where First Amendment violation shown); *see also Nken v, Holder*, 556 U.S. 418, 435 (2009) (balancing of harms and public interest elements tip conclusively in harmed party's favor where First Amendment violation demonstrated).

Because Plaintiffs demonstrated First Amendment violations, any arguments that the public policy and balancing of harms elements tip in Appellants' favor are meritless. Whatever public health goals Appellants may possess, they have no latitude to pursue those objectives in an unconstitutional manner. *See Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (emphasizing that "upholding constitutional rights serves the public interest"); *see also Legend Night Club v. Miller,* 637 F.3d 291, 302-03 (4th Cir. 2011) (holding the government will "in no way be harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions").

## CONCLUSION

The District Court's issuance of preliminary injunctive relief should be affirmed.

## STATEMENT CONCERNING ORAL ARGUMENT

Whether the West Virginia CVL violates the First Amendment in Plaintiffs' case presents important issues that threaten the constitutional rights of all persons in this Circuit; oral argument is thus warranted.

Dated: September 19, 2025                Respectfully submitted,

                                         /s/ *Aaron Siri*
                                         Aaron Siri
                                         Elizabeth A. Brehm
                                         Walker Moller
                                         SIRI & GLIMSTAD LLP
                                         745 5th Avenue, Suite 500
                                         New York, NY 10151
                                         888-747-4529
                                         aaron@sirillp.com
                                         ebrehm@sirillp.com
                                         wmoller@sirillp.com

                                         /s/ *Christopher Wiest*
                                         Christopher Wiest
                                         (KBA 90725)
                                         Chris Wiest, Atty at Law,
                                         PLLC
                                         50 E. Rivercenter Blvd.,
                                         Ste.1280
                                         Covington, KY 41011
                                         513-257-1895
                                         chris@cwiestlaw.com

                                         *Attorneys for Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  Pursuant to Local Rule 32(b) and Federal Rules of Appellate Procedure 32(a)(7)(B)(i), this document complies with the type-volume limits. Excluding parts exempted by Fed. R. Civ. P. 32(f) (i.e., cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, and certificates of counsel) this document contains 10,645 words.

2.  This document complies with the typeface requirements because this document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Century Schoolbook.

*/s/ Christopher Wiest*
Christopher Wiest
(KBA 90725)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd., Ste.1280
Covington, KY 41011
Direct: 513-257-1895
chris@cwiestlaw.com

58