**CASE NO: 24-2132**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

KRYSTLE and ANTHONY PERRY, individually and on behalf of their minor child K.P.

*Plaintiffs-Appellees*

v.

STACY MARTENEY, in her official capacity as the Virtual Learning Coordinator of the Upshur County Virtual School; CHRISTINE MILLER, in her official capacity as Superintendent of the Upshur County School District.

*Defendants-Appellants*

and

THE BOARD OF EDUCATION OF THE COUNTY OF UPSHUR, et al.

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHER DISTRICT OF WEST VIRGINIA, AT ELKINS

---

**REPLY BRIEF OF DEFENDANTS-APPELLANTS
STACY MARTENEY AND CHRISTINE MILLER**

---

Corey L. Palumbo (7765)
William M. Lorensen (13223)
Bowles Rice LLP
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100
Fax: (304) 347-1756
cpalumbo@bowlesrice.com
wlorensen@bowlesrice.com

Robert J. Kent (5010)
Leigh Anne Wilson (13927
Bowles Rice LLP
125 Granville Square, Ste 400
Morgantown, WV 26501
(304) 554-2603
Fax: (304) 285-2530
rkent@bowlesrice.com
lwilson@bowlesrice.com

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

   I.   The CVL is subject to rational basis review. ...............................................2

      A.   The CVL is neutral and generally applicable .....................................2

          i.  Medical and religious exemptions are not "comparable" for general applicability purposes. ...................................................................2

          ii.  The CVL's medical exemption process does not give rise to strict scrutiny under *Fulton*. ........................................................................5

      B.   The other bases for strict scrutiny are without merit. .........................8

          i.  The hybrid rights theory is not a basis for a preliminary injunction. ........................................................................................8

          ii.  The CVL does not burden religious exercise in the fashion of *Mahmoud* or *Yoder*. ..................................................................9

   II.   K.P.'s as-applied circumstances as a virtual student do not carry the distinctive force Plaintiffs ascribe. ...........................................................12

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

Cases

*Bosarge v. Edney*,
  669 F. Supp. 3d 598 (S.D. Miss. 2023)…………………………………………..3

*Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)...........................................................................................2

*Combs v. Homer-Center Sch. Dist.*,
  540 F.3d 231, 244-47 (3d Cir. 2008) ...................................................................10

*D.J. v. Mercer Cnty. Bd. of Educ.*,
  2013 WL 6152363, *4 (W. Va. Nov. 2013) .........................................................11

*Dahl v. Board of Trs. of Western Mich. Univ.*,
  15 F.4th 728, 733 (6th Cir. 2021) ...................................................................8

*Doe v. Bd of Regents of Univ. of Co.*,
  100 F.4th 1251, 1273 (10th Cir. 2024) ...................................................................8

*Does 1-6 v. Millsi,*
  16 F.4th 20, 31 (1st Cir. 2021)........................................................................1, 3

*Emp't Div., Dep't of Human Res. of Or. v. Smithi,*
  494 U.S. 872 (1990)) .......................................................................7

*Fraternal Order of Police Newark Lodge No. 12 v. Newark*,
  170 F.3d 359, 360 (3d. Cir. 1999) .......................................................................8

*Kissinger v. Bd. of Trs. of Ohio St. Univ., Coll of Vet. Med.*,
  5 F.3d 177, 180 (6th Cir. 1993) .......................................................................10

*Leebaert v. Harrington*,
  332 F.3d 134 (2d Cir. 2003) .......................................................................10

*Mahmoud v. McKnight*,
  102 F.4th 191, 217 (4th Cir. 2024) .......................................................................9

*Mahmoud v. Taylor*,
145 S. Ct. 2332 (2025)......................................................................... 9, 11, 12, 13

*Parents for Priv. v. Barr*,
949 F.3d 1210, 1237 (9th Cir. 2020) ................................................................10

*Pauley v. Kelly*,
162 W. Va. 672, 255 S.E.2d 859 (1979)..............................................................14

*Prince v. Massachusetts*,
321 U.S. 158, 166 (1944).......................................................................................11

*Tandon v. Newsome*,
593 U.S. 61 (2021)................................................................................... 1, 3, 5, 6

*United States v. Chester*,
628 F.3d 673, 682 (4th Cir. 2010) ....................................................................14

*United States v. Hill*,
703 F. Supp. 3d. 729, 733 (E.D. Va. 2009) .......................................................14

*U.S. Navy SEALs 1-26 v. Biden*,
578 F. Supp. 3d 822, 837 (N.D. Tx. 2022)……………………………………….3

*We the Patriots USA, Inc. v. Ct. Office of Early Childhood Dev.*,
76 F.4th 130, 152-155 (2d Cir. 2023).................................................. 1, 3, 4, 5, 7

*Wisconson v. Yoder*,
406 U.S. 205 (1972)………………………………………………………...9, 10, 11

Other Authorities

*Geographic Clustering of Nonmedical Exemptions to School Immunization
Requirements and Associations with Geographic Clustering of Pertussis*, 168
(12) AM. J. Epidemiology 1389 (2008) .............................................................13

**INTRODUCTION**

The District Court's central error below is finding that West Virginia's compulsory vaccine law ("CVL") is subject to strict scrutiny because it allows medical exemptions but not religious ones. (J.A. 582-588.)  Both Courts of Appeals addressing analogous mandatory vaccination laws held otherwise. *Does 1-6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021); *We the Patriots USA, Inc. v. Ct. Office of Early Childhood Dev.*, 76 F.4th 130, 152-155 (2d Cir. 2023).  The CVL's medical exemption—which *advances* the state's public health interests and is essential to the law's operation—is not comparable to exemptions for religious (or other conscience-based) objectors for purposes of a Free Exercise Clause analysis.  The CVL is subject to rational basis review, which it survives, as-applied to this virtual student.

The Response Brief does not persuasively rebut this.  Plaintiffs read *Tandon* and *Fulton* to render the CVL subject to strict scrutiny, but they misapply both cases.  Plaintiffs argue that strict scrutiny is warranted under a hybrid-rights theory and *Mahmoud*, arguments that are not persuasive and were not addressed below.  And Plaintiffs rely on K.P.'s as-applied circumstances, but his status as a virtual student does not change the level of scrutiny applied to the CVL.  The vaccination of virtual students contributes to herd immunity and reduces the risk of outbreaks and transmission of vaccine-preventable disease in the community.  Ultimately, the CVL is appropriately tailored to the state's public health interests, as-applied to virtual

1

students like K.P. For these reasons, Appellant requests that the District Court's injunction order be reversed.

## ARGUMENT

**I.      The CVL is subject to rational basis review.**

    A.    <u>The CVL is neutral and generally applicable.</u>

The CVL is neutral: it requires immunization against certain vaccine-preventable diseases and has nothing to do with religious beliefs. The CVL is generally applicable: religious and comparable secular conduct are treated the same, and the sought-after comparison between medical and religious exemptions is not cognizable under Free Exercise Clause jurisprudence. As a general law of neutral applicability, the CVL is subject to rational basis review. *See Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

        *i.    Medical and religious exemptions are not "comparable" for general applicability purposes.*

Plaintiffs' and the District Court's comparison between medical and religious exemptions is misplaced. Both the First and Second Circuit Courts of Appeals have rejected this comparison in vaccine mandate cases. *See Does 1-6*, 16 F.4th at 31 ("The comparability concerns the Supreme Court flagged in the *Tandon* line of cases

2

are not present here."); *We the Patriots USA*, 76 F.4th at 152-155 (same). No Court of Appeals decision adopts this comparison.[1]

The First and Second Circuits are correct, and there are two principal reasons why religious and medical exemptions are not comparable. First, medical exemptions serve the State's public health interests in a way that religious exemptions would not. Medical exemptions serve the state's public health goals by ensuring that children who have medical contraindications to a vaccine are not required to injure themselves as a pre-requisite to attend public school. Religious exemptions (or, for that matter, secularly motivated conscientious exemptions) serve no such interest; rather, they compromise the state's public health goals to serve personal and autonomous interests.

Second, public health data shows that religious exemptions are far more numerous than medical exemptions, jeopardizing vaccination rates and herd immunity in a way that medical exemptions simply do not. (*See* Opening Br. at 21.) Exemptions based on medical criteria are relatively consistent across time and the human population; conscientious/religious exemptions are greater in number and

---

[1] The two District Court decisions cited by Appellees are not persuasive. First, in *Bosarge v. Edney*, all parties (including the government) urged the Court to recognize religious exemptions. 669 F. Supp. 3d 598, 607-608 (S.D. Miss. 2023). Second, the vaccine mandate *U.S. Navy SEALs 1-26 v. Biden* included not just a medical exemption, but an exemption for servicemembers choosing to participate in clinical trials. 578 F. Supp. 3d 822, 837 (N.D. Tx. 2022).

3

tend to cluster in particular communities.  (*See id.*) As a result, medical and religious exemptions are different in terms of both the state's interests in allowing the exemptions and the degree of the medical risk posed by them.  There is no double standard in recognizing medical exemptions but no others.

To sustain the comparison, Plaintiffs interpret the state's public health interests in a narrow fashion.  To Plaintiffs, an unvaccinated child is an unvaccinated child, regardless of whether that child is exempt from vaccination for religious or medical reasons.  (Resp. Br. at 33 ("In isolation, any one of these non-vaccination scenarios . . . fatally undermines every possible objective undergirding the CVL.").)[2] But this siloed inquiry "is based on a misunderstanding of the State's interest in mandating vaccination in schools." *We the Patriots USA*, 76 F.4th at 153.  The CVL "promotes the health and safety" of both vaccinated and unvaccinated students "by decreasing, to the greatest extent medically possible, the number of unvaccinated students . . . ." *Id.*  Vaccination of all medically possible students protects the small minority who are medically unable.  Religious exemptions (or for that matter,

---

[2]      Appellees also compare how the CVL applies (or does not apply) in a host of other settings (like adults in school, and children outside of the public school setting) and to other diseases (like COVID-19).  (Resp. Br. at 31-33.)  Notably, these are not comparisons between religious and secular conduct: Appellees compare how the CVL applies in other contexts, none of which have religious considerations.  As a matter of public health policy, the CVL could certainly reach more broadly; but nothing in the First Amendment requires states to employ the *most* restrictive options when enacting public health laws.

conscientious exemptions of any kind) compromise the state's public health interests in a way that medical exemptions do not.

Plaintiffs have no persuasive basis to silo the comparability analysis in the fashion they advocate. Plaintiffs rely almost entirely on *Tandon v. Newsome*, 593 U.S. 61 (2021), but *Tandon* is not on point because it is not a vaccine case. *Tandon* addressed COVID-19 restrictions that prohibited at-home gatherings for religious worship but permitted large group gatherings in public for a host of other secular reasons (like dining and commercial gatherings). *See* 593 U.S. 61 (2021). The government justified its treatment of religious gatherings by relying on assumptions about religious settings' ability to implement less restrictive safeguards against transmission. As the Supreme Court observed, the government's assumptions were not supported by evidence. *Id.* at 63-64. This comparability analysis has nothing to do with the CVL or its medical exemptions. The state action in *Tandon* prohibited gatherings for religious worship in a way that bears no factual resemblance to longstanding childhood immunization laws for vaccine-preventable diseases.

Indeed, the First and Second Circuits rejected Plaintiffs' narrow application of *Tandon* in First Amendment challenges to vaccine requirements. *See We the Patriots USA*, 76 F.4th at 153 ("We . . . reject plaintiffs' [interpretation of *Tandon* to mean] that we should cabin our analysis to the risk an individual child who is unvaccinated . . . might pose to the health and safety of . . . students."); *Does 1-6*, 16

5

F.4th at 32 ("[T]he comparability concerns the Supreme Court flagged in the *Tandon* line of cases are not present here."). Plaintiffs offer no sound factual or legal reason to apply *Tandon* in this fashion.

> ii. *The CVL's medical exemption process does not give rise to strict scrutiny under* Fulton.

Relatedly, the District Court held that the CVL is subject to strict scrutiny under *Fulton* due to the individualized nature of medical exemptions. (*See* J.A. 584-587.) But the CVL's medical exemption process does not give rise to any problem under *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021)

In *Fulton*, the City of Philadelphia ceased referring foster children to a Catholic foster care agency upon learning that the agency would not certify same-sex couples based on the organization's religious beliefs about marriage. *See* 593 U.S. at 527. The City barred agencies from discriminating on the basis of sexual orientation "unless an exception is granted" in the City's sole discretion. *Id.* at 535. The Supreme Court held that this law was not generally applicable because it "invites the government to consider the particular reasons for [the agency's] conduct by providing a mechanism for individualized exceptions." *Id.* at 533 (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)) (cleaned up). The discretionary exception process in *Fulton* was not generally applicable because it "invite[d] the government to decide which reasons for not complying with the policy are worthy of solitude." *Id.* at 537 (quoting *Smith*, 494 U.S. at 884).

6

The CVL's recognition of medical exemptions does not resemble *Fulton*. While medical exemptions under the CVL are indeed "individually assessed" (like any other medical condition), they do not "invite the government to decide which reasons for not complying with [the CVL] are worthy of solitude." *See We the Patriots USA*, 76 F.4th at 151 (same for medical exemptions to Connecticut's childhood vaccine requirement); *Does 1-6*, 16 F.4th at 30 (same for medical exemptions to Maine's vaccine requirement for medical workers). Under the CVL, medical exemptions are granted for medical contraindications or particular precautions to specific vaccines. Medical exemptions are available to applicants of any religion (or no religion at all) and without regard to religious views. They do not invite the State to pass judgment on the conscientious-based reasons that people may resist vaccines. The West Virginia Bureau for Public Health, which decides medical exemptions under medical criteria, is not shrouded with the sort of discretion that may foster anti-religious animus or antipathy, as was the case in *Fulton*.

Arguing otherwise, Plaintiffs claim that "several sister circuits" have concluded that medical exemptions to a compulsory vaccine law give rise to strict scrutiny under *Fulton*. (*See* Resp. Br. at 20-21.) This is untrue and the authority

7

they cite does not support that proposition.[3]  In fact, there are no Court of Appeals cases treating medical exemption processes to compulsory vaccination as triggering strict scrutiny under *Fulton*.

The CVL is a neutral law of general applicability; it has nothing to do with religion and treats religious and comparable secular conduct the same way by not recognizing any exemptions for conscientious objectors to vaccines.  By concluding otherwise, the District Court committed reversible error.

B.      The other bases for strict scrutiny are without merit.

Plaintiffs advocate for other ways to avoid rational basis review.  The District Court did not address these alternative arguments; they are without merit and do not tip the scales towards a likelihood of success on the merits.

i.      *The hybrid rights theory is not a basis for a preliminary injunction.*

For two reasons, Plaintiffs' invocation of "hybrid rights" is unpersuasive. First, the hybrid rights doctrine has never been recognized in this Circuit.  *See*

---

[3]      The exemption processes in both *Dahl v. Board of Trs. of Western Mich. Univ.* and *Doe v. Bd of Regents of Univ. of Co.* involved requests for religious exemptions that the government considered on a case-by-case basis.  *See* 15 F.4th 728, 733 (6th Cir. 2021); 100 F.4th 1251, 1273 (10th Cir. 2024).  This discretionary review of religious beliefs poses a *Fulton* problem that is unlike the Bureau for Public Health's review of applications for medical exemptions under medical criteria.  Likewise, *Fraternal Order of Police Newark Lodge No. 12 v. Newark* pre-dates *Fulton* and is not a compulsory vaccination case.  *See* 170 F.3d 359, 360 (3d. Cir. 1999).  Rather, it involved a police department's policy against facial hair which did not involve any public health interests or medical contraindications and pre-dates *Fulton*.  *See id.*

*Mahmoud v. McKnight*, 102 F.4th 191, 217 (4th Cir. 2024), reversed on other grounds *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025)). Three Circuit Courts of Appeals have rejected hybrid rights. *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 244-47 (3d Cir. 2008); *Leebaert v. Harrington*, 332 F.3d 134, 143-44 (2d Cir. 2003); *Kissinger v. Bd. of Trs. of Ohio St. Univ., Coll of Vet. Med.*, 5 F.3d 177, 180 (6th Cir. 1993). As Justice Alito stated in a recent concurring opinion, "it is hard to see the justification for this curious doctrine . . . such a scheme is obviously unworkable and has never been recognized outside of *Smith*." *Fulton*, 592 U.S. at 599 (Alito, J., concurring).

Second, the hybrid rights doctrine does not warrant preliminary injunctive relief when the plaintiff is unlikely to succeed on the merits of his or her underlying constitutional claims. *Parents for Priv. v. Barr*, 949 F.3d 1210, 1237 (9th Cir. 2020) ("[A]lleging multiple constitutional claims that do not have a likelihood of success on the merits cannot be enough to invoke a hybrid rights exception and require strict scrutiny."). Here, Plaintiffs are not likely to succeed on the merits of either the Free Exercise claim or the claim to a violation of educational rights. "[P]ublic education is a public right, one a private right subject to judicial enforcement." *D.J. v. Mercer Cnty. Bd. of Educ.*, 2013 WL 6152363, *4 (W. Va. Nov. 2013) (unpublished). And "[t]he right to practice religion freely does not include the liberty to expose the community or the child to communicable disease or the latter to ill health or death."

9

*Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).  The hybrid rights doctrine does not apply, and even if it did, would not lead to a likelihood of success for Plaintiffs.

          *ii.*      *The CVL does not burden religious exercise in the fashion of* Mahmoud *or* Yoder.

As another basis for strict scrutiny, Plaintiffs cite the Supreme Court's recent decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2361 (2025).

*Mahmoud* addressed a religious objector's request for an opt-out from a school's LGBTQ+ storybooks for K-5 students.  *See* 145 S. Ct. at 2343.  The storybooks were "designed to present certain values and beliefs as things to be celebrated and certain contrary values and beliefs as things to be rejected."  *Id.* at 2353.  The Court held that the storybooks "carry with them 'a very real threat of undermining' the religious beliefs that the parents wish to instill in their children," imposing "a set of values and beliefs that are 'hostile' to their parents' religious beliefs."  *Id.* at 2355 (citing *Yoder*, 406 U.S. at 218).

The *Mahmoud* Court applied strict scrutiny, invoking *Wisconsin v. Yoder* "as an exception to the general rule that governments may burden religious exercise pursuant to neutral and generally applicable laws."  *Id.* at 2361.  The *Yoder/Mahmoud* exception applies when "a law 'substantially interfere[es] with the religious development' of a child."  *Id.* at 2353 (quoting 406 U.S. 205, 218 (1972)).  *Yoder*, itself, involved the application of the State of Wisconsin's compulsory school attendance law as-applied to Amish highschoolers.  *See* 406 U.S. 205.  That, too,

10

was "hostile to Amish beliefs . . . during the crucial and formative adolescent period of life." *Id.* at 211.

Both *Yoder* and *Mahmoud* involved a "hostility" between public education curricula and religious beliefs. Applying *Yoder/Mahmoud* is a "fact-intensive" inquiry that depends on "the specific religious beliefs and practices asserted, as well as the specific nature of the educational requirement or curricular feature at issue." *Mahmoud*, 145 S. Ct. at 2353. "A court must consider the specific context in which the instruction or materials are presented. Are they presented in a neutral manner, or are they presented in a manner that is hostile to religious viewpoints and designed to impose upon students a pressure to conform?" *Id.*

*Yoder* and *Mahmoud* are simply not on point. Neither case involved public health laws; both involved conflict and hostility between the content of public education and religious beliefs. As an exception to the longstanding jurisprudence of neutrality and general applicability, *Mahmoud* and *Yoder* should not be extended to public health laws like the CVL that, unlike the laws in *Mahmoud* and *Yoder*, show no such "hostility" to religious beliefs.

At most, *Mahmoud* supports vacating and remanding, rather than affirming, the preliminary injunction. *Mahmoud* was decided after the preliminary injunction order, and the parties did not brief or introduce evidence under *Mahmoud* below.

11

This recently decided Supreme Court decision does not support affirming the District Court on alternate grounds on this record.

## II.    K.P.'s as-applied circumstances as a virtual student do not carry the distinctive force Plaintiffs ascribe.

The Response Brief emphasizes that K.P.'s First Amendment challenge is "as-applied" to his particular situation—namely, that he is a student enrolled in Upshur County Schools' virtual schooling program.  This means that K.P. must show that "the law is unconstitutional as applied to [his] case."  *United States v. Hill*, 703 F. Supp. 3d. 729, 733 (E.D. Va. 2009).

K.P.'s as-applied circumstances do not carry the distinctive force that Plaintiffs ascribe them.  K.P.'s status as a virtual student does not change the level of scrutiny applied to the CVL.  "[T]he level of scrutiny . . . depends on the nature of the conduct being regulated and the degree to which the challenged law burdens that right."  *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010).  Both the conduct and the nature of CVL's burden (i.e., requiring vaccination as a predicate to school enrollment notwithstanding a religious objection) is the same regardless of whether K.P. is a virtual or in-person student.[4]  Likewise, the CVL's neutrality and

---

[4]    K.P.'s educational rights do not rise and fall on his status as a virtual or in-person student.  The right to an education is about the *quality* of education and does not hinge on the physical means or facility in which it is provided.  *See Pauley v. Kelly*, 162 W. Va. 672, 700-05, 255 S.E.2d 859, 874-78 (1979) (surveying other states and defining a thorough and efficient education as one that "allows the minds,

12

general applicability do not depend on K.P.'s enrollment as a virtual or in-person student. As a result, K.P.'s as-applied challenge does not change the fact that the CVL is subject to rational basis review and does not serve as a strong distinction to authority upholding this (and other) mandatory vaccination laws.

K.P.'s status as a virtual student bears on whether compulsory vaccination is rationally-related (or narrowly tailored) to the State's public health interests. Contrary to the Response, the state has legitimate and compelling reasons to apply the CVL to virtual students. The vaccination of all non-medically exempt students (including virtual students) contributes to herd immunity and serves to protect all students, and the most medically vulnerable in particular. As members of the community, virtual students interact with other students outside the school setting. Virtual students are eligible for school-provided extra-curricular activities and must go to school, in person, for testing. The state's compelling interest in ensuring a maximally vaccinated student population is no less compelling for virtual students as it is for in-person students.[5]

---

bodies and social morality of its charges to prepare them for useful and happy occupations, recreation and citizenship, and does so economically").

[5]    West Virginia allows alternatives to public school that do not require compliance with the CVL—like learning pods and microschools, W. Va. Code § 18-8-1-(n)(1)(A)—but contrary to the District Court, that does not pose a narrow tailoring problem. (*See* J.A. 592-93.) It actually goes the other way: the CVL could be more broadly tailored, but is not.

Allowing religious exemptions for virtual students is not a more narrowly tailored (or less restrictive) means to achieve the state's interest in a maximally vaccinated student population. Religious exemptions—including those for virtual students—inherently compromise the state's public health interests rather than serving them more narrowly or less-restrictively. (Opening Br. at 24 (public health data showing outbreaks of vaccine-preventable disease like measles in other states, but not West Virginia).) "Geographic pockets of exemptors pose a risk to the whole community," not just those they interact with during the hours of virtual schooling. (*Id.* at 21 (quoting Saad B. Omer et al., *Geographic Clustering of Nonmedical Exemptions to School Immunization Requirements and Associations with Geographic Clustering of Pertussis*, 168 (12) AM. J. Epidemiology 1389 (2008)).)

## CONCLUSION

For these reasons, Appellant requests that the preliminary injunction order below be reversed.

Respectfully Submitted,

/s/ Corey L. Palumbo
Corey L. Palumbo (7765)
William M. Lorensen (13223)
Bowles Rice LLP
600 Quarrier Street
Charleston, WV 25301

14

(304) 347-1100
Fax: (304) 347-1756
cpalumbo@bowlesrice.com
wlorensen@bowlesrice.com


Robert J. Kent (5010)
Bowles Rice LLP
501 Avery Street, Post Office Box 49
Parkersburg, WV 26102
(304) 485-8500
Fax: (304) 420-5587
rkent@bowlesrice.com


Leigh Anne Wilson (13927)
Bowles Rice LLP
125 Granville Square, Suite 400
Morgantown, WV 26501
(304) 554-2603
Fax: (304) 285-2530
lwilson@bowlesrice.com


*Counsel for Appellants STACY MARTENEY, in her official capacity as the Virtual Learning Coordinator of the Upshur County Virtual School; CHRISTINE MILLER, in her official capacity as Superintendent of the Upshur County School District,*

15

## **CERTIFICATE OF COMPLIANCE**

I, Corey L. Palumbo, hereby certify that this document complies with the type-volume limits set forth in Federal Rule of Appellate Procedure 32(a)(7)(A), insofar as this Reply brief does not exceed 15 pages (excluding the cover page, table of contents, table of authorities, signature block, and certificates of counsel). This document also complies with the type-face limits insofar as it contains 3,347 words, fewer than 6,500 word limit in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

I also certify that this document complies with the typeface requirements because it has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: October 10, 2025

/s/ Corey L. Palumbo
Corey L. Palumbo (WVSB #7765)

16